Argued October 27, affirmed December 23, 1964

LEMONS *v.* KELLY ET AL

397 P. 2d 784

*Ralph Currin,* Pendleton, argued the cause for appellant Curtis King. On the briefs were Currin & French, Pendleton.

*Harold A. Fabre,* Pendleton, argued the cause for appellant Billy Audrian Kelly. On the brief were Fabre & Collins, Pendleton.

No appearance for appellant Hubert Kelly.

*Roy Kilpatrick,* Canyon City, argued the cause and submitted a brief for respondent.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

SLOAN, J.

This was an action for injuries suffered by plaintiff in an automobile accident. The accident occurred on a highway near Pendleton. Plaintiff was riding in a car driven by defendant Kelly. She alleged that immediately prior to the accident Kelly had been racing with a car driven by defendant King. The case was submitted to the jury to decide if the defendants were racing at the time of or immediately preceding the accident and, if so, was the racing the cause of the accident and plaintiff's injuries. The jury returned a verdict for plaintiff. Both defendants appeal.

There can be no doubt that liability for injury to a third person is imposed upon all participants in an automobile race even though only one vehicle is actually involved in an accident. *Nelson v. Nason,* 1961,

343 Mass 220, 177 NE2d 887; *Saisa v. Lilja* (1st Cir 1935) 76 F2d 381, 60 CJS § 297, page 702.

However, in the instant case defendants urge that a verdict should have been directed in their favor because, they say, even if there had been racing it had terminated an appreciable time before the accident happened.

Plaintiff testified that the racing started on the city streets of Pendleton and continued onto a rural highway referred to as the Cold Springs Highway. According to plaintiff's testimony the cars were racing abreast on Court street in Pendleton leading to the highway. At some point on Court street the King car went ahead and, apparently, remained ahead until Kelly was able to pass King on the Cold Springs Highway outside of the city. They also raced abreast on the highway before Kelly was able to pass. The passing occurred on a straight stretch of the highway just before the highway entered a series of curves. It was on one of the curves that the Kelly car left the highway. Just how far it was from the passing to the accident is not clear. Defendants' claim it was a mile to a mile and a half.

In support of their argument that the race had terminated defendants rely on testimony of plaintiff elicited in cross-examination. This is the testimony defendants rely on:

"A After we passed Curtis.

"Q After you passed Curtis there was no further racing?
"A We were still both going fast.

"Q Now then, can you answer the question, where did the race terminate?
"A On Cold Springs Highway.

"Q Well, where on Cold Springs Highway?
"A I don't know the exact place.

"Q Would you answer this way, would you answer this: Was the race continuing right to the time when the accident occurred?
"A No, it was not.

"Q Then at the time that the accident occurred the race had been completed, is that right?
"A Yes.

"Q It would have been complete. Now, from the time that the race was complete until the accident occurred, how far did you go?
"A I don't know how far it was, not too much further.

"Q But it's your considered answer that the race had been terminated, is that right?
"A We were still going fast. We weren't side by side.

"Q Yes. And the race had been concluded?
"A We weren't side by side, that's all I know.

"Q One more time: Had the race been concluded?
"A We weren't side by side.
"*  *  *  *  *

"Q And this would have been the area approximately half way from the road junction up to the radio shack, is that correct?
"A Yes.

"Q Now, that's your considered answer?
"A This is where we started passing him (indicating).

"Q That's where it was completed?
"A And up here is where it was completed (indicating).[*]

---

[*] The "indicating" refers to a map of the scene. A blind reference to an exhibit of this kind is meaningless in the record here.

"Q And that's where the race terminated, is that correct?
"A Yes, he was behind us then.
"* * * * *

"Q (By Mr. Currin) There was no further race?
"A No."

Plaintiff testified that at a later date when plaintiff was in the hospital defendant Kelly admitted to her that there had been racing. She also stated that Kelly continued to drive his car at a speed of 70 to 80 miles per hour after the passing and until the accident happened. The speed and position of the King car after the passing is not certain. He testified that he arrived at the accident about 15 seconds after it happened. How he arrived at that estimate was not disclosed.

■■■ Plaintiff was entitled to have all of her testimony weighed by the jury. The testimony relied on by defendants was not a judicial admission precluding her right to recover. Her answers that the race had ended were not related "* * * to matters within [her] special knowledge and in part to facts about which only plaintiff was fully informed." *Bockman v. Mitchell Bros. Truck Lines*, 1958, 213 Or 88, 101, 320 P2d 266, 69 ALR2d 152. For reasons we will shortly mention it was the state of mind of the defendants in those seconds of time between the passing and the accident that was crucial; not necessarily what plaintiff may have thought it to be. Both defendants denied any racing. However, for the purpose of ruling on the motion for directed verdict, we must accept as true the evidence that racing occurred. And, if the jury accepted the full force of all of plaintiff's testimony, it could have inferred that the race had been temporarily

abated because of the sharp curves. Plaintiff had testified that Kelly had passed the King car just before the cars reached one of the curves; which curve she referred to we cannot tell. It would thus be for the jury to consider all of the evidence and decide if the impetus to race had ended.

It was also for the jury to decide if the racing was the cause of the accident. For even if the race had terminated some seconds before it would still be for the jury to decide if there were a causal connection between the racing and the accident. In *Nelson v. Nason,* supra, at 177 NE2d, page 888, the court holds:

"Direct testimony of any agreement to race was not required. 'For harm resulting to a third person from the tortious conduct of another, a person is liable if he \* \* \* (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other \* \* \*.' Restatement: Torts, § 876. It was reasonable for the jury to infer that Nason's reckless close pursuit culminating in his passing Perham (at an unobserved but necessarily high speed) was a cause of Perham's excessive speed within the following moments up to the time of collision. There was evidence of challenge and response in the speed and relative positions of the two automobiles. \* \* \*"

and in the other cited case *Saisa v. Lilja,* at 76 F2d 381, the court held:

"\* \* \* The only question of law sufficiently doubtful to call for discussion is that presented by the defendant's request for a ruling that if he had in fact abandoned the race before the accident, he was not responsible for Keefe's action. The District Judge instructed the jury in substance that if the defendant and Keefe engaged in a race as stated, and Keefe at a time when he did not know that the defendant had withdrawn and supposed that the race was still on, negligently struck the

intestate, the defendant would be liable if the jury regarded his connection with the accident as negligence. In our opinion the ruling was right. * * * This responsibility lasted as long as either continued to act under the agreement for the race, without knowledge of its abandonment by the other, and within the scope of it."

■ These cases state the proper rule. It is said in all of the authorities cited that racing on a highway is hazardous to all other persons upon the highway and that the actor participates at his peril. This rule was adopted in the earlier cases, see *Reader v. Ottis,* 1920, 147 Minn 335, 180 NW 117, 16 ALR 463, and has been followed in all of the later cases that have been found. *Boykin v. Bennett,* 1961, 253 NC 725, 118 SE2d 12, and the authorities therein cited. One who does participate in setting in motion such hazardous conduct cannot thereafter turn his liability off like a light switch. From the authorities cited we conclude that one who participates in setting such hazardous conduct in motion cannot later be heard to say: "Oh! I withdrew before harm resulted even though no one else was aware of my withdrawal." It would be a reasonable probability that the excitement and stimulus created by this race of several miles had not dissipated nor, in fact, terminated at all, in the fraction of a minute in time between the act of passing and the accident. The state of mind of the participants was material. We cannot gauge that state of mind to the point of saying that the stimulus or intent had ended. The evidence warrants a finding that it did continue. It would be for the jury to decide if the racing were the cause of the accident. *Jones v. Northwestern Auto Supply Co.,* 1932, 93 Mont 224, 230, 18 P2d 305.

It has also been held that criminal liability attaches to both participants in a race when one of them causes

death to a third person. *People v. Kemp,* 1957, 150 Cal App2d 654, 310 P2d 680, although a contrary decision was reached by a divided court, in *Commonwealth v. Root,* 1961, 403 Pa 571, 170 A2d 310, 82 ALR2d 452. The latter case, however, denied criminal liability on the basis that the court would not apply civil tort concepts of causation to a criminal case. These cases fortify the rule that all participants in a race are civilly liable for injuries to a third person which results from the racing.

There are other assignments of error which we consider to be without merit. The critical issues of the case were the evidence of racing and the causal connection between the racing and the accident. We hold that these issues were properly submitted to the jury. Judgment affirmed.

PERRY, J., dissents.