90 N.J. Super. 170 (1966)
216 A.2d 607
ALF ANDREASSEN, PLAINTIFF-APPELLANT,
v.
MICHAEL P. ESPOSITO, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 8, 1965.
Decided January 28, 1966.
*171 Before Judges GAULKIN, LABRECQUE and BROWN.
Mr. Herbert E. Greenstone argued the cause for appellant (Messrs. Greenstone & Greenstone, attorneys).
Mr. Garret A. Hobart, IV, argued the cause for respondent (Messrs. Schenck, Price, Smith & King, attorneys; Mr. William R. Albrecht, on the brief).
The opinion of the court was delivered by BROWN, J.A.D.
Plaintiff appeals from a jury verdict in favor of defendant Michael P. Esposito and denial of his motion for a new trial.
Plaintiff, a Rockaway Township police officer, was directed by his superior to assist in the apprehension of two automobile *172 speeders (later ascertained to be defendant Esposito and one Carl Decker) who were engaged in a drag race and being pursued by an officer of the adjacent Township of Denville. Plaintiff sustained severe injuries when his police car was struck by that of Decker at an intersection. He instituted suit against both drivers. There was a settlement by Decker and, at the trial against Esposito which followed, the jury found for defendant.
Esposito admitted that he engaged in a race with Decker on Morris Avenue in Denville, but testified that it was meant to end at Ford Road and that he did not compete with Decker thereafter. Esposito continued to drive behind the Decker vehicle, however, for an additional distance of more than two miles until he came to a stop at the Boonton Radio plant in Rockaway Township.
It was open for the jury reasonably to find from the evidence that Esposito did not break off the race until he reached the latter point, three-tenths of a mile from the collision intersection. If this was the jurors' conclusion, they were not instructed properly upon the resulting question of proximate cause.
They had been told by the judge, in his charge, that plaintiff sought to recover from Esposito on the basis that the latter was jointly negligent with Decker and, in particular, that Esposito thereby created a foreseeable risk that Decker would hit another car. Then, in substance, the Esposito defense was outlined by the court as follows:
"The defendant says, and you heard this throughout the trial, that, `I had no personal knowledge of the collision. I was not in the auto involved in the accident. I had stopped. I was standing still. The accident was three-tenths of a mile away.'
All this means just one thing. These aren't separate theories of law. All this just means that he was not guilty of any negligence but that the accident was the sole negligence of Carl Decker * * *."
The jury was further instructed that if the combined or concurrent negligence of both drivers was the proximate cause of plaintiff's injuries, Esposito would be liable, but that the *173 verdict should be in the latter's favor if Decker's negligence was the sole proximate cause. It was suggested that Decker's conduct be first considered in the deliberations. A finding in his favor on the negligence issue would absolve Esposito, the court said, because
"* * * obviously, when you stop to think about it, Esposito, who had stopped three-tenths of a mile away and was not the driver of the car and not even in the car that hit the plaintiff, Andreassen, he couldn't be guilty of negligence if Decker wasn't because he is being charged, as I explained to you before, of being jointly and severally negligent."
It was undisputed that Esposito did bring his vehicle to a stop prior to Decker's collision with plaintiff. The legal significance of this circumstance in the proximate cause context was left entirely to the jury's speculation. They were free to conclude that the race (and defendant's liability) would be at an end with this unilateral action on Esposito's part.
The critical consideration was whether, notwithstanding his physical location, results naturally and proximately ensuing from his conduct continued to operate in production of the accident. In such an event Esposito would not necessarily be free of liability because he had stopped. Vadurro v. Yellow Cab Co. of Camden, 6 N.J. 102, 107 (1950); Batts v. Joseph Newman, Inc., 3 N.J. 503, 510 (1950). As was said in 38 Am. Jur., § 55, p. 703:
"Assuming that there is a direct, natural, and continuous sequence between an act and an injury, through which the force of the act operated without the interposition of separate force other than such a force as the act itself might have set in motion, the act can be accepted as the proximate cause of the injury without reference to its separation from the injury in point of time or distance."
See also Restatement, Second, Torts § 439 (1965).
The legal effect of a driver's asserted abandonment of an unlawful automobile race, resulting in harm to a third party, has not been expounded in a reported decision by a court of this State. It has been adjudicated elsewhere. In Saisa v. Lilja, 76 F.2d 380 (1 Cir. 1935), there was a highway race *174 between two automobiles driven by defendant Saisa and one Keefe. As a consequence, plaintiff's decedent, a pedestrian, was struck by Keefe's car and Saisa was sued for negligently causing death. He defended on the ground that he was not in the vicinity of the accident, having abandoned the race some time before it happened. There was contrary proof indicating that defendant was actively racing with Keefe at the time although not closely engaged. The trial court instructed the jury that if Keefe negligently hit the decedent at a time when he did not know that defendant had withdrawn and supposed that the race was still in progress, defendant would be liable. In affirming, the court held:
"* * * the defendant and Keefe were engaged in a joint tort, in the prosecution of which each was responsible for the acts of the other. * * * This responsibility lasted as long as either continued to act under the agreement for the race, without knowledge of its abandonment by the other, and within the scope of it." (at p. 381)
The same rejection of abandonment by unilateral act was implied by dictum in Boykin v. Bennett, 253 N.C. 725, 118 S.E.2d, 12, 17 (Sup. Ct. 1961).
The continuing liability of one claiming to have broken off participation in a motor vehicle race was stated in Lemons v. Kelly, 239 Ore. 354, 397 P.2d 784 (Sup Ct. 1964). Here plaintiff was riding in a car operated by defendant Kelly who had been racing with defendant King. Kelly overtook King and thereafter the Kelly car went out of control causing plaintiff's injuries. The latter brought action against both drivers. They contended that the race was over when Kelly passed King at a point which they said was a mile or a mile and a half before the place of the accident. Plaintiff recovered against both defendants in the jury trial. On appeal it was held that the evidence presented an issue for the jury as to whether "the impetus to race had ended." In this connection, the court said:
"* * * it was the state of mind of the defendants in those seconds of time between the passing and the accident that was crucial * * *. *175 One who does participate in setting in motion such hazardous conduct cannot thereafter turn his liability off like a light switch. * * * [He] cannot later be heard to say `Oh! I withdrew before harm resulted even though no one else was aware of my withdrawal.' It would be a reasonable probability that the excitement and stimulus created by this race of several miles had not dissipated nor, in fact, terminated at all, in the fraction of a minute in time between the act of passing and the accident." (397 P.2d, at p. 787)
Thus, if the jurors in the case at bar found that Esposito was racing until he brought his car to a halt at Boonton Radio, they had no instruction concerning his responsibility for residual effects of the race if Decker was continuing under its influence. The court merely told them in the charge that a "race" is not defined by the statute  "[it] doesn't say how long the race is, when or where it shall be conducted or when it ends." Further, it was said, "he [Esposito] went on and tried to explain what he thought was a race * * * but what you are going to have to determine by the preponderance of the evidence is as to whether or not it was a race in accordance with the facts before you jurors here and the statute that I gave you."
The jurors returned to the courtroom with a question nearly two hours after retirement for deliberation. They wanted to know, "What is substance of the two laws [sic] involved in racing and in connection with the tie-in of negligence of Esposito with Decker's negligence which was mentioned in the charge?" A supplemental charge was delivered which merely reiterated the standard rules of foreseeability and proximate cause.
We conclude that the failure of the court to inform the jury under what circumstances the racing culpability of Esposito could continue to be a proximate cause of plaintiff's injuries even though the Esposito car was no longer in motion, constituted plain error requiring reversal of the judgment in the interest of substantial justice. R.R. 1:5-3(c). The issue was raised by this court during the hearing of the present appeal. Ford v. Reichert, 23 N.J. 429, 435 (1957).
*176 The other questions presented on this appeal are academic as a result of the foregoing disposition.
The judgment is reversed and the case is remanded for a new trial.