188 So.2d 268

**ALABAMA FARM BUREAU MUTUAL CASUALTY INSURANCE COMPANY, Inc.**

v.

**Henry J. GOODMAN et al.**

5 Div. 830.

Supreme Court of Alabama.

June 23, 1966.

Thos. F. Parker, Montgomery, for appellant.

Reneau & Reneau, Wetumpka, for appellee Goodman.

MERRILL, Justice.

Appeal from a decree in a declaratory judgment proceeding by the complainant insurance company, wherein the trial court held that the insurer's liability policy afforded coverage to the owner of the automobile in an accident where the automobile ran over and killed a boy on a bicycle.

On April 25, 1965, the owner and named insured permitted his son, Henry J. Goodman, to use his automobile, and in the accident Charles E. Cook, the minor son of Robert Cook, was killed.

The facts are stipulated as follows:

"* * * 'On Sunday afternoon, April 25, 1965, Charles Cook, now deceased, and Henry J. Goodman were at Cook's Garage in the City limits of Wetumpka, Alabama, which is located on Alabama Highway 111. Goodman had his father's car and Cook had his bicycle. They got into a discussion as to who could get to Wagnon's store first. Wagnon's store is about three hundred yards from Cook's Garage. Goodman was to give Cook a head start on his bicycle at a point about even with the intersection of West Main Street and Highway 111, which is about one hundred yards from Cook's Garage. The one that reached Wagnon's store

first would win one dollar. They each put up a dollar and the bet was placed in the hands of one Larry Mack. Cook got on his bicycle and went to the point on the highway agreed to be the starting point. This is a two lane highway. They both started at the same time and Goodman overtook Cook in the automobile and the automobile and the bicycle collided and Cook received personal injuries from which he died the night of April 25, 1965.' "

The provision in the policy here involved is one of the exclusions. The policy provides:

"This insurance does not apply under:

"(m) any of the coverages, if the injury or damage is caused by an automobile race or competitive speed test; * * *."

The parties agree that this was not an automobile race.

The sole question for decision is whether the race between the automobile and the bicycle was a "competitive speed test."

█ The use of the word "or" between automobile race and competitive speed test denotes its use in the disjunctive. Smith v. Hutson, 262 Ala. 352, 78 So.2d 923.

We list a few rules that this court has set for the construing of insurance contracts.

█ Contracts of insurance, like any other contract, must be construed to give effect to the intention of the parties. If the terms are clear and unambiguous, there is no need for construction. Ambiguities will not be inserted, by strained and twisted reasoning, into contracts where no such ambiguities exist. Michigan Mutual Liability Co. v. Carroll, 271 Ala. 404, 123 So. 2d 920, and cases there cited.

█ Insurance policies should be liberally construed to effect the intention of the parties, and in cases of doubt a contract will be construed more strongly against the party who framed it. But the function of the courts is to construe them, not to make them. In the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability, and to impose whatever conditions they please upon their obligations not inconsistent with public policy; and the courts have no right to add anything to their contracts, or to take anything from them. Life & Casualty Ins. Co. of Tenn. v. Whitehurst, 226 Ala. 687, 148 So. 164; Shinn v. Family Reserve Ins. Co., 33 Ala.App. 281, 33 So.2d 741.

█ In ascertaining intent of the parties, language of the policy will be given its common interpretation, and only clauses which are uncertain, will be construed favorably to the insured. The Praetorians v. Hicks, 234 Ala. 451, 175 So. 258; Empire Life Ins. Co. v. Gee, 178 Ala. 492, 60 So. 90.

█ It is the duty of the courts to take the words of an insurance policy as they are found in it, and as persons with usual and ordinary understanding would construe them when used to express the purpose for which they were employed. Holloway v. State Farm Mutual Automobile Ins. Co., 275 Ala. 41, 151 So.2d 774; Franklin Life Ins. Co. v. Lewis, 36 Ala.App. 313, 55 So. 2d 518.

█ It is elementary that when an insurance company writes an exclusion in a liability policy it intends to limit or exclude a risk. The risk sought to be excluded here was an "automobile race or competitive speed test." These words express excessive speed and an increased risk and situations in which an automobile is not usually found or entered by the ordinary owner or driver.

Taking the three words "competitive speed test" singly, we find "competition" defined in Webster's New International Dictionary, Second Edition, as (1) the act of seeking or endeavoring to gain what another is endeavoring to gain at the same

time; common strife for the same object; etc., (2) a contest between rivals; a match or trial between contestants. "Speed" is defined by Webster's, supra, as an act or state of moving swiftly; swiftness; rapidity; dispatch. Webster's defines "test" as subjection to conditions that show the real character of a person or thing in a certain particular; any critical examination or decisive trial.

The stipulated facts show that Goodman and Cook were both seeking the same thing at the same time. They were both racing to determine who could get to Wagnon's Store first and win the dollar bet. And the speed of their respective vehicles was of the essence. They knew that the bicycle could not go as fast as the automobile, but the handicap Cook received would require greater speed by the automobile. Certain it is that the two boys were engaged in a "competition" involving speed because both were seeking to gain what the other was seeking to gain at the same time; and the thing to be gained depended upon the speed of each of the vehicles between their respective starting lines and the finish line. The race was a decisive trial in a speed competition.

There is no uncertainty or ambiguity in the words "competitive speed test" and giving the words their common interpretation as people with ordinary understanding would construe them, we are convinced that the stipulated facts in this cause show that Goodman was engaged in a competitive speed test and the Goodman automobile was without the coverage of the policy when the accident happened.

The only Alabama case cited by appellees is Alabama Farm Bureau Mutual Casualty Ins. Co. v. Cofield, 274 Ala. 299, 148 So.2d 226. The insurance there did not apply under any coverages "while the automobile is operated in a pre-arranged race or competitive speed test." The cars involved in that case had been racing prior to the accident, but the "drag race" was over at the time it occurred. This court said:

"* * * After a close reading of the entire record, it is manifest that the overwhelming proof is that there was no racing between the automobiles at the time of the accident. Indeed, there is no evidence to the contrary. All the witnesses observing stated there was no racing at the time of the accident. Therefore, the withholding of the fact of racing that day would not permit the insurer to avoid liability, this being immaterial."

Certainly that case is not apt authority here.

The only other case cited dealing with the "competitive speed test" clause is Country Mutual Ins. Co. v. Bergman, 38 Ill. App.2d 268, 185 N.E.2d 513. There, the pertinent policy exclusion was effective when the automobile was operated in a "pre-arranged race or competitive speed test." There, as in the Cofield case, supra, the drivers of the two automobiles involved and a passenger in one of them "were positive there was no agreement to race and no conversation about a race." The testimony of these witnesses was also to the effect that one car was attempting to pass the other car.

Also, the exclusion in the *Bergman* case read: "(1) to any automobile while used as a public or livery conveyance, or while being operated in any pre-arranged race or competitive speed test, or while rented or leased to others." The Illinois Court held that the first and third parts of the exclusion related to commercial or business ventures, i. e., (1st) public conveyances, and (3rd) rented or leased vehicles. The court said that when the (2nd) provision was limited to a commercial or business venture it made Exclusion (1) a single classification—the "operation of the automobile in a commercial or business venture whether it be as a livery or public conveyance, or in a pre-arranged race or competitive speed test or while rented or leased to others."

· The situation in the instant case is vastly different. There was no other classification grouped with the exclusion of an "automobile race or competitive speed test." And there, the testimony was that there was no race, and one car was merely attempting to pass the other; while here, the stipulated facts show clearly that the automobile was participating in a "competitive speed test" with a designated goal or finish line and a monetary wager on the outcome of the test.

We hold that appellant's policy, in the aspect at issue, is unambiguous and capable of only one reasonable construction. It follows that the policy excludes the claim sued on by appellee Cook, and that the decree must be reversed and the cause remanded.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.