AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN, A CORPORATION, APPELLANT, v. LARRY E. TOURNOR ET AL., APPELLEES.

185 N. W. 2d 267

Filed March 26, 1971. No. 37644.

Luebs, Tracy, Huebner & Dowding and James A. Beltzer, for appellant.

E. H. Powell, Warren Urbom, Larry G. Carstenson, and H. L. Blackledge, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

This is a declaratory judgment action to determine whether an exclusion clause in an automobile insurance policy applied to exclude coverage for a particular accident. The clause excluded coverage to any automobile "* * * while used in any prearranged racing or speed contest." The district court held that the exclusion was not applicable and that the policy was in full force and effect.

The plaintiff, American Standard Insurance Company, was the automobile insurance carrier of the defendant, Larry E. Tournor, on a policy covering a 1965 Oldsmobile automobile owned by him and his wife. At approximately 2 a.m. on a Sunday morning in May 1968, Larry E. Tournor and one Gary Stevenson arranged to have a "drag race" on a quarter-mile "strip" on State Highway No. 14, north of Aurora, Nebraska. Both drivers were familiar with the "drag strip" on the highway and its starting point and finishing line. A number of spectators gathered around the starting point. Michael Tournor, a brother of Larry, drove his Pontiac automobile north

past the finish line of the drag strip, parked it on the east side of the highway headed west, and turned his lights out. There were six people in the car.

The two competing cars lined up side by side at the starting point, headed north. The drivers were alone in their cars. Larry Tournor's car was in the right lane of the two-lane blacktop highway. Gary Stevenson's car was in the left lane. The starter stood between the two cars and slightly in front and started the race with arm signals. Larry Tournor's automobile almost immediately gained a substantial advantage. By the time he reached approximately the halfway point of the quarter-mile strip, Gary Stevenson gave up the race, decelerated and pulled over into the right-hand lane behind Larry Tournor's car. At a point approximately three-fourths of the distance down the strip, and before the finish line, Larry Tournor saw Stevenson's lights in his rear-view mirror, and ceased accelerating. Larry Tournor intended to proceed to the next intersection approximately half a mile away for the purpose of turning around and coming back. Meanwhile, Stevenson had slowed down to approximately 15 to 20 miles per hour, had pulled his right wheels off on the shoulder, and was preparing to turn around. At a point somewhere between one-eighth and one-fourth of a mile north of the finish line, the Michael Tournor car, which had been parked on the east side of the road headed westerly with its lights out, suddenly pulled onto the highway in front of Larry Tournor. Larry swung his car to the left and the vehicles met almost head-on in the west or southbound lane.

Estimates of the maximum speed attained by Larry Tournor's automobile during the race varied from 75 miles per hour to 95 miles per hour. At the point of the collision, the only evidence is that his speed was 60 to 70 miles per hour. Many of the spectators quit watching the race as soon as it became apparent to them that Larry Tournor had won.

A jury trial was waived by the parties and the trial court specifically found that any prearranged race or speed contest shown by the evidence was fully terminated prior to the collision; that the exclusion in the policy did not apply; and that the plaintiff insurance company was obliged to defend its insured under the policy. The trial court's declaratory judgment was entered accordingly.

There is no dispute but that a prearranged drag race took place. The evidence is virtually uncontradicted that the race had been completed. The principal assignment of error rests on the contention that under the language of the exclusion here, the Larry Tournor car was still being "used in" a prearranged racing contest, after the competitive portion of the racing contest was completed. The exclusion here read: "This policy does not apply:

"Under any of the coverages,

"a. to any automobile (1) while rented or leased to others by the insured, (2) while used as a public or livery conveyance, or (3) while used in any prearranged racing or speed contest * * *."

Interpretation of exclusion (3) is before us for the first time. Similar clauses have been interpreted only infrequently anywhere. A 1969 annotation at 23 A. L. R. 3d 1444 cites only four cases on the subject, ranging from 1923 to 1966. See, Alabama Farm Bureau Mut. Cas. Co., Inc. v. Cofield, 274 Ala. 299, 148 So. 2d 226; Mulconery v. Federal Auto. Ins. Assn., 230 Ill. App. 236; Country Mut. Ins. Co. v. Bergman, 38 Ill. App. 2d 268, 185 N. E. 2d 513; Alabama Farm Bureau Mut. Cas. Ins. Co., Inc. v. Goodman, 279 Ala. 538, 188 So. 2d 268, 23 A. L. R. 3d 1437. The language of the exclusionary clauses in those cases varied somewhat and there were widely differing fact situations. It is quite apparent that no general rule of law can be formulated. The applicability of such an exclusionary clause depends upon its

language and the particular foundational facts to which the specific language must be applied.

In only one of the cases cited did the court find that the policy exclusion applied. In that case, the accident occurred during the course of the race and the person killed was a participant. The language involved excluded coverage "if the injury or damage is caused by an automobile race or competitive speed test * * *." See Alabama Farm Bureau Mut. Cas. Ins. Co., Inc. v. Goodman, *supra*.

The language used in the policy now before us obviously did not intend to exclude all races and all speed contests. At least one court has interpreted almost identical language as referring to a race or speed contest of a commercial or business type. See Country Mut. Ins. Co. v. Bergman, *supra* (1962). The word "while" connotes a specific segment of time. The word "in" can mean "in the course of" or "during." Either construction terminates the exclusion at the identical time the excluded event terminates. Such a construction is particularly indicated when a noncommercial race is held on a public highway, where policy coverage is specific and intended both before and after the occurrence of the excluded race.

We have held many times that if a contract prepared by an insurer is reasonably open to different interpretations, one favorable to the insurer and one advantageous to the insured, the one favorable to the insured will be adopted. Rolfsmeier v. Implement Dealers Mut. Ins. Co., 182 Neb. 150, 153 N. W. 2d 367. The ultimate determination of whether of not an exclusionary clause applies in a case such as this inevitably involves factual determinations. Section 25-21,157, R. R. S. 1943, provides that when a declaratory judgment proceeding "* * * involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in

other civil actions in the court in which the proceeding is pending." Here a jury trial was waived. The judgment of the trial court in an action at law where a jury has been waived has the effect of a verdict of a jury and it will not be set aside unless clearly wrong. Winchell v. National Bank of Commerce Trust & Sav. Assn., 181 Neb. 870, 152 N. W. 2d 2; Wonderling v. Conley, 182 Neb. 446, 155 N. W. 2d 349.

In this case the evidence established that the race was over at the time of the collision. The trial court specifically found that "any prearranged racing or speed contest shown by the evidence was fully terminated prior to the collision." The court also specifically determined that the language of the policy excluding coverage for the automobile "while used in any prearranged racing or speed contest" did not apply to the facts here. Those determinations by the trial court were correct. The judgment is affirmed.

AFFIRMED.

NEWTON, J., dissenting.

I respectfully dissent.

It is conceded that a prearranged racing or speed contest occurred and that the accident occurred a short distance beyond the finish line. The only question presented is one of interpretation. What is meant by the term "while used in" a prearranged race?

Cases involving this proposition, for the most part, display a disposition to go to great lengths in finding excuses to limit this exclusionary clause. In Krempel v. Noltze, 41 Wis. 2d 454, 164 N. W. 2d 227, the clause was disregarded on the ground that racing on a public highway was illegal and a Wisconsin statute provided that no policy could exclude from its coverage the operation of a motor vehicle for an unlawful purpose. In Mulconery v. Federal Auto. Ins. Assn., 230 Ill. App. 236, it was held that the evidence failed to show a race or speed test had occurred. In Alabama Farm Bureau

Mut. Cas. Ins. Co., Inc. v. Cofield, 274 Ala. 299, 148 So. 2d 226, it was held that there was no proof of racing at the time of the accident although it occurred only a half mile from the spot where a witness observed the cars take off side by side. In Country Mut. Ins. Co. v. Bergman, 38 Ill. App. 2d 268, 185 N. E. 2d 513, it was held that no prearranged race or speed test had occurred as the court interpreted the phrase "prearranged race or competitive speed test" to be limited to a commercial or business venture such as commercial race promotions. In only one instance has the exclusionary clause been sustained. It was enforced in Alabama Farm Bureau Mut. Cas. Ins. Co., Inc. v. Goodman, 279 Ala. 538, 188 So. 2d 268, 23 A. L. R. 3d 1437, where an accident occurred during the actual course of a race between a car and a bicycle.

Modern day interpretations of insurance policies display a definite trend toward a tendency to permit recoveries regardless of the contract provisions. Rather than follow the law of contracts and attempt to construe the policies in the light of what the parties understood and intended, they are strictly construed in favor of the insured. Simple and uncomplicated language no longer suffices in defining exclusions. To stand the light of legal interpretation, voluminous statements and descriptions defining them down to "a gnat's eyebrow" are required.

There would not appear to be any good and sufficient ground for failing to accord insurance contracts the same reasonable interpretation, under all existing circumstances, accorded other contracts. The policy under consideration also contains an exclusionary clause as follows: "* * * while used as a public or livery conveyance, * * *." It does not say it is confined to a situation in which the automobile is used in such a business. If an automobile owner or operator, not in such a business, agreed to haul a passenger for hire when does the "livery conveyance" terminate? Does it

terminate immediately on his dropping the passenger at the designated destination or does the engagement in the livery business continue on the return trip? Logically it would continue as the entire round trip is occasioned by engaging in the "livery business."

In a drag race, the engagement in the race may involve more than occurs over the designated course. If two cars are to approach the starting line at a designated speed, the approach is also part of the race. In view of the fact that in a race the participants cannot stop immediately at the finish line, it seems that the slowing down and stopping is also essentially a part of the race although this occurs beyond the finish line. The cars are still being *used* in a race or speed contest although the winner has been determined. Such is also the reasoning used in negligence cases. In Andreassen v. Esposito, 90 N. J. Super. 170, 216 A. 2d 607, where one of two participants had stopped and abandoned the race, liability continued for "results naturally and proximately ensuing."

In 38 Am. Jur., Negligence, § 55, p. 703, it is stated: "Proximity in point of time, space, or distance, of an event to an injury is important in determining liability for negligence only in so far as it bears upon proximity of causation. The proximate cause of an injury is not necessarily the immediate cause; not necessarily the cause nearest in time, distance, or space. Assuming that there is a direct, natural, and continuous sequence between an act and an injury, through which the force of the act operated without the interposition of separate force other than such a force as the act itself might have set in motion, the act can be accepted as the proximate cause of the injury without reference to its separation from the injury in point of time or distance."

In Lemons v. Kelly, 239 Ore. 354, 397 P. 2d 784, it is stated: "It was also for the jury to decide if the racing was the cause of the accident. For even if the race had terminated some seconds before it would still be for the

jury to decide if there were a causal connection between the racing and the accident."

In the present case, although Larry Tournor had crossed the finish line and was gradually slowing down, he was still traveling at an excessive and illegal rate of speed at the time of the accident. To hold, as does the majority opinion, that the exclusionary clause applied prior to his having reached the finish line, but not 3 feet beyond, is not reasonable. This court has said that: "Starting and stopping are as much an essential part of travel on a motor vehicle as is 'motion.'" Greyhound Corp. v. Lyman-Richey Sand & Gravel Corp., 161 Neb. 152, 72 N. W. 2d 669. Just as surely as starting and stopping is a part of traveling in a motor vehicle, it is also part of racing. Larry Tournor stated he was intending to continue on to a crossroad before turning and going back. This may have a bearing on the question of "stopping" after the race, but it cannot be denied that he was proceeding at the time of the accident at a high and excessive rate of speed, engendered by and resulting from the race, and he had not yet reduced his speed to a normal or lawful rate. His automobile was still being used in racing and came within the term "while used in any prearranged racing or speed contest."

WHITE, C. J., and CARTER, J., join in the foregoing dissent.