CUSTOM LEASING, INC., A CORPORATION, APPELLANT, V. CARLSON STAPLER & SHIPPERS SUPPLY, INC., A CORPORATION, APPELLEE.
237 N. W. 2d 645

Filed January 22, 1976. No. 40146.

Monen, Seidler & Festerson, for appellant.

Larry R. Forman of Schmid, Ford, Mooney, Frederick & Caporale, for appellee.

Heard before SPENCER, McCOWN, and NEWTON, JJ., and COLWELL and IRONS, District Judges.

McCOWN, J.

This is an action on a guaranty agreement. Jury trial was waived and the case was tried to the court. After trial, upon consideration of the evidence the District Court entered judgment against the plaintiff and in favor of the defendant, and plaintiff has appealed.

The plaintiff, Custom Leasing, Inc., is a Nebraska corporation engaged in the business of purchasing various kinds of equipment and leasing it to users. It is a wholly owned subsidiary of the Otoe County National Bank of Nebraska City, Nebraska. The defendant, Carlson Stapler and Shippers Supply, Inc., is a Nebraska corporation engaged in the business of selling and distributing industrial machinery, among other things.

In 1970, the defendant contacted Creative Buildings, Inc., of Urbana, Illinois, which was in the business of constructing prefabricated modular homes. Creative Buildings was interested in securing specialized equipment for use in the manufacture and assembly of modular homes but was unable to finance the purchase of the equipment. Plaintiff and defendant together with Creative determined that plaintiff would buy the equipment from the defendant and lease it to Creative, subject to defendant's guaranty.

The plaintiff purchased seven pieces of equipment built to Creative's specifications from the defendant for the sum of $55,116.32, and the equipment was shipped to Creative. On October 16, 1970, plaintiff entered into a lease of the equipment with Creative for a term of 3 years for a total rental of $68,256, payable $1,896 per month. The lessee, Creative, also had the option to continue the lease from year to year thereafter.

On November 2, 1970, the defendant executed the guaranty agreement involved here. It was on a dealer guaranty form prepared by plaintiff. After preliminary recitals, the agreement provides: "NOW THEREFORE, for and in consideration of mutual convenants and agreements, and for the further consideration of inducing the LESSOR to lease the aforesaid equipment to the said LESSEE, the undersigned DEALER does hereby promise that in the event the LESSEE fails to perform any of the terms of the aforesaid Lease Agreement, the DEALER agrees to Repossess the said equipment at his own expense and therwith (sic) simultaneously pay the LESSOR forthwith an amount equal to the number of remaining months and/or fraction of a month thereof under Lease Agreement #E-1801 multiplied by a factor of 2.777% computed against the original invoice cost of said equipment.

"IT IS FURTHER UNDERSTOOD AND AGREED that any and all costs and damages, incurred or sustained by LESSOR by reason of taking possession of said equipment will be borne and paid for by the undersigned DEALER."

On November 1, 1970, plaintiff, by letter, gave Creative an option to purchase the equipment at the termination of the lease for a purchase price of $2,624.59. Defendant did not know of the option to purchase until more than a year later.

On October 30, 1970, the plaintiff assigned the lease to Otoe County National Bank of Nebraska City, Nebraska. On November 12, 1970, the Otoe County Na-

tional Bank filed a financing statement in the recorder's office of Champaign County, Illinois, covering the equipment lease. It was improperly filed with the wrong authority.

Payments from Creative to plaintiff under the lease were reasonably current for the first 7 or 8 months of the lease, but were late during the summer of 1971, and payments for September and October 1971, were made on November 1, 1971. Thereafter Creative made no further payments. On February 8, 1972, defendant sent a check to the plaintiff for $1,460.12, the amount of plaintiff's service charges on the lease for the months of November and December 1971, and January and February 1972. On January 28, 1972, Creative Buildings, Inc., filed bankruptcy proceedings in Illinois, and notice to creditors was given on February 18, 1972. On February 22, 1972, plaintiff wrote to defendant advising it of the bankruptcy and made demand upon the defendant for $32,222.62, the amount then due and owing on the guaranty. The defendant responded on February 25, 1972, stating that it stood ready to make good its guaranty but before doing so asked for assurance that good and sufficient title to and right of possession of the equipment involved would be reconveyed and granted to the guarantor. The equipment was in the hands of the trustee in the bankruptcy proceedings, who laid claim to the equipment on the basis that the improper filing of the financing statement and the minimal option price for purchase at the termination were indicative of the fact that it was not a true lease but a secured transaction. The plaintiff then directed its attorneys to take steps to secure a release of the equipment and in June 1972, the Otoe County National Bank through its Illinois attorneys filed a reclamation petition in the bankruptcy proceedings. On March 19, 1973, after several continuances requested by plaintiff's counsel, the bankruptcy court determined that the lease to Creative was an effective lease and not a secured transaction

and granted possession of the equipment to Otoe County National Bank, the assignee of the plaintiff.

In the 13 months between February 1972, and March of 1973, there was a sharp decrease in the value of the equipment involved because of several factors, including a change in laws and building codes regarding modular homes. The evidence was that the equipment was worth more than $32,000 in February 1972, but when it was sold after March 19, 1973, it produced only $24,762.12. Because of the loss of value, the defendant was no longer willing to make payment on its guaranty.

On May 9, 1973, Otoe County National Bank reassigned the lease to the plaintiff and this proceeding was filed in the District Court on May 11, 1973. The amended petition sought the recovery of $8,522.82 due on the guaranty after application of all sums received in disposing of the equipment, and the sum of $6,789.39 for attorney's fees and costs in obtaining possession of the equipment from the trustee in bankruptcy, a total of $15,312.21.

The plaintiff asserts that the guaranty was absolute and not conditional and that a creditor's failure to protect collateral, even if negligent, is not a defense to a claim against an absolute guaranty. The defendant contends that the guaranty agreement as drawn is ambiguous, must be interpreted against the plaintiff, and that under the circumstances here, the guaranty was conditional rather than absolute. The defendant also contends that active negligence which results in detriment to a guarantor will exonerate the guarantor, even under an absolute guaranty. Defendant also asserts that affirmative acts or negligent omissions of the creditor which diminish the security of the guarantor discharge the guarantor pro tanto, if not completely.

In a contract upon a form prepared and regularly used by one of the parties, disputed provisions of doubtful or ambiguous meaning should be construed against the party preparing such document. The guaranty here

was on a form prepared for and used by the plaintiff. Any ambiguity or doubt as to its meaning must be resolved against the plaintiff. See Lyman-Richey Sand & Gravel Co. v. State, 123 Neb. 674, 243 N. W. 891. That principle is peculiarly applicable to guaranties. See City National Bank of Lincoln v. Denslow, 114 Neb. 600, 209 N. W. 254.

The language of the guaranty here must be interpreted with reference to the document as a whole and, if possible, effect must be given to every part. The provision for costs incurred by the lessor by reason of taking possession of the equipment, when read in conjunction with the language that the dealer agrees to repossess the equipment, may be interpreted as placing the burden of initial taking of possession from the lessee upon the lessor, with the obligation of the dealer then being to repossess from the lessor. The guaranty requires the dealer to repossess the equipment at its own expense and "therewith simultaneously pay" the lessor. The right to repossession can be said to be a condition precedent to the obligation to pay.

Under the circumstances here, the defendant could not repossess the equipment from the trustee in bankruptcy without proper evidence of title and right of possession of the equipment. Upon the filing of the petition for reclamation in the bankruptcy court by the plaintiff or its assignee, there was thereafter no room for any claim by the defendant guarantor. See, 3 Collier on Bankruptcy (14th Ed.), § 57.05[5], p. 153, § 57.21, p. 365; Bankruptcy Rule 304. The conduct of the parties themselves justifies the inference that the plaintiff assumed the right and burden of taking possession from the trustee in bankruptcy, and that payment by the defendant, under the terms of the guaranty, was to be made simultaneously with repossession. All these factors point to a conditional guaranty.

In any event, the critical issue in this case is not whether the guaranty is absolute or conditional but

whether or not the plaintiff's actions harmed or diminished the value of the equipment security, injured the defendant, or deprived it of subrogation rights. The general rule is that a surety or guarantor is entitled to be subrogated to the benefit of all the security and means of payment under the creditor's control and, therefore, in the absence of assent, waiver, or estoppel, he is generally released by an act of the creditor which deprives him of such right. See, 74 Am. Jur. 2d, Suretyship, § 86, p. 63, § 92, p. 67; 38 Am. Jur. 2d, Guaranty, § 126, p. 1135.

Restatement, Security, § 132, p. 358, provides: "Where the creditor has security from the principal and knows of the surety's obligation, the surety's obligation is reduced pro tanto if the creditor (a) surrenders or releases the security, or (b) wilfully or negligently harms it, or (c) fails to take reasonable action to preserve its value at a time when the surety does not have an opportunity to take such action."

The cases in many instances distinguish between affirmative action and passive nonaction, and impose liability for the affirmative action in either an absolute or conditional guaranty, but impose liability for passive negligence only under a conditional guaranty. Here the actions of the plaintiff and its assignee were affirmative and intentional as well as negligent. There is ample evidence upon which the District Court could have found that the actions of the plaintiff and its assignee bank in improperly filing the financing statement in Illinois, and in granting to Creative an option to purchase the equipment at the termination of the lease for $2,624.59, were taken without the knowledge or assent of the defendant guarantor; were willful or negligent; and that such actions were the direct and proximate cause of the refusal of the trustee in bankruptcy to deliver possession of the equipment and of the litigation, delay, and loss of value of the equipment. There are reasonable inferences to be drawn from the

evidence that except for these actions of plaintiff and its assignee, the trustee in bankruptcy would have promptly released the equipment without litigation and neither plaintiff nor defendant would have suffered a loss. Whether the guarantor is entitled to a full discharge or only pro tanto, it is released from its liability to the extent of the injury caused by the willful or negligent acts of the plaintiff and its assignee bank.

Some courts, on similar related issues, have extended the rule as to negligent affirmative acts to include a negligent failure to act. See, D. W. Jaquays & Co. v. First Security Bank, 101 Ariz. 301, 419 P. 2d 85; First Nat. Bank in Grand Forks v. Haugen Ford, Inc., 219 N. W. 2d 847 (N. D.); Behlen Mfg. Co. v. First Nat. Bank of Englewood, 28 Colo. App. 300, 472 P. 2d 703. Such cases are fully supportive of the determination here.

The issues of whether the actions of the plaintiff and its assignee bank were willful or negligent, and whether such actions deprived the defendant of rights to the equipment security, the amount of the loss, and the extent of defendant's injuries were all factual determinations. The case was tried to the court without a jury. Under such circumstances, the judgment has the effect of the verdict of a jury and will not be set aside unless clearly wrong. American Standard Ins. Co. v. Tournor, 186 Neb. 585, 185 N. W. 2d 267.

The judgment of the District Court was correct and is affirmed.

AFFIRMED.