CRANE CO., A CORPORATION, APPELLEE, v. ROBERTS SUPPLY COMPANY, A CORPORATION, APPELLANT.

241 N. W. 2d 516

Filed May 5, 1976. No. 40274.

Alfred A. Fiedler, for appellant.

Edward G. Garvey and James R. McGreevy, for appellee.

Heard before WHITE, C. J., NEWTON, CLINTON, and BRODKEY, JJ., and KUNS, Retired District Judge.

WHITE, C. J.

This is an action brought by the plaintiff, Crane Co. (hereinafter referred to as Crane), against the defendant, Roberts Supply Company (hereinafter referred to as Roberts), alleging that Roberts was indebted to Crane in the amount of $29,828.85, for termination charges on valves which were either completed or partially completed pursuant to two purchase orders placed by Roberts with Crane. Roberts claimed it was justified in terminating these orders due to Crane's failure to deliver on the dates specified in their agreement. Roberts also filed a cross-petition, claiming that as a result of Crane's delay in delivery on these two orders, Roberts lost other government contracts and resulting profits.

The case was tried to the court which found for Crane in the amount of $29,828.25 with interest of $9,704.11, for a total of $39,532.36, plus costs of $195.60. Roberts' cross-petition was dismissed. Roberts filed a motion for a new trial which was overruled. This appeal followed. We affirm the judgment of the District Court.

The record reveals the following transaction. On June 11, 1968, Crane mailed Roberts a price quotation on

80 ¼″, 64 ¾″, and 70 1″ GS globe valves. On June
19, 1968, Roberts offered to furnish these valves to the
Defense Supply Agency (hereinafter referred to as
DSA). On September 12, 1968, the DSA awarded Roberts
contract No. DSA 700-69-C-2241 for the above valves.
According to the contract the valves were to be shipped
to Columbus, Ohio, within 350 days from the date of the
award, or by August 25, 1969.

On October 31, 1968, Roberts offered to furnish the
DSA with 38 ¾″, and 39¼″ GS globe valves. On
November 1, 1968, Crane mailed Roberts its price quota-
tion on these valves. On December 17, 1968, the DSA
awarded Roberts contract No. DSA 700-69-C-6451 for
these valves. According to the contract these valves
were to be shipped to Columbus, Ohio, and Oakland,
California, within 350 days from the date of the award,
or by November 30, 1969.

On February 11, 1969, Crane received Roberts' pur-
chase order G-3795, for 80 ¼″, 64 ¾″, and 70 1″
GS globe valves. Enclosed with this order was a copy
of DSA contract No. 700-69-C-2241, and a copy of the
notice of award. The order specified the delivery date
as "before August 25, 1969," the same as Roberts' delivery
date under DSA contract No. 700-69-C2241. Roberts did
not place its order with Crane for the valves required
under this government contract until almost 5 months
had elapsed from the date the contract was awarded.
Robert Swartz, chairman of the board of Roberts at the
time, testified the delay was caused by Roberts' unsuc-
cessful attempt to get the government to accept a valve
from a different manufacturer.

On the same date, Crane also received Roberts' pur-
chase order G-3796, for 38 ¾″ and 49 ¼″ GS globe
valves. Enclosed with this order was a copy of DSA
contract No. 700-69-C-6451, and a copy of the notice of
award. This order specified the delivery date as "be-
fore November 30, 1969," which was the same as Roberts'
delivery date under DSA contract No. 700-69-C-6451.

This order was not placed until almost 2 months after the date of the award.

On February 12, 1969, Cornelius Ausema, Navy and Marine government sales manager of Crane, wrote to Morris Karpen, sales manager of Roberts, acknowledging receipt of the orders, but refusing to accept the delivery dates specified by Roberts. Ausema wrote: "Due to the late receipt of these orders it will be impossible to meet due dates measured from dates of contracts. We will, of course, be committed to deliver valves within the forecasts named in our proposals measured from date of receipt, namely February 11, 1969. The valves on Order G-3794 and G-3795 will be due on January 27, 1970 (350 days from February 11, 1969). Valves on Order G-3796, will be scheduled for shipment on/or before February 6, 1970 (360 days from February 11, 1969).

"As already stated verbally we cannot agree to accept penalties or price considerations for delayed deliveries, i.e., deliveries measured from dates of award. We need your acknowledgment of this agreement."

Swartz testified that when Roberts received Ausema's letter dated February 12, 1969, it became concerned and wanted the delivery dates on the orders clarified. He testified that Karpen called Crane in Chicago, and as a result Mr. Peter Pagratis of Crane came to Roberts' Omaha office in mid-February. During their meetings, Swartz testified, Pagratis called someone in Chicago, and thereafter assured Roberts that Crane would make delivery on the dates specified in Roberts' purchase orders or sooner. George Shafer, vice president of Roberts, testified that he saw Pagratis in Roberts' offices in mid-February, in the presence of Karpen and Swartz, and that Pagratis stated he could improve upon the deliveries and would do everything in his power to expedite shipment. Don Foy, a Roberts' employee at this time, testified he heard Pagratis say Crane would come close to, if not meet, the required government delivery dates on the two orders. Pagratis, a Crane employee at this

time, after refreshing his recollection with weekly travel expense reports, testified that he was not in Omaha at any time between February 2, 1969, and April 26, 1969.

On March 3, 1969, Karpen wrote back to Ausema: "We acknowledge receipt of your letter of February 12, 1969 and ask that you please exert every effort to conform to the delivery date which we have specified. In the event that it is through our fault that any penalties are incurred, we will stand these."

Karpen's letter made no mention of Pagratis' alleged visit or of any of the representations Pagratis was alleged to have made at this time.

On March 18, 1969, Crane advised Roberts concerning order G-3795, that it could furnish an additional 34 ¾″ GS globe valves at the same price each as in the original order, but advised: "It is important, however, that the additional order be in our hands within ten (10) days to permit simultaneous manufacture."

On April 11, 1969, Crane received Roberts' purchase order G-3795 ADD, adding 34 ¾″ valves to its order, G-3795. Roberts wrote: "We are enclosing herewith our Purchase Order # G-3795-ADD and a copy of the Government Modification adding 34 valves to our original order. Will you please do all you can to expedite shipment."

On August 4, 1969, Karpen wrote W. J. Seebauer of Crane, concerning order G-3795: "The government requests that we do all we can do to expedite shipment of the valves required on the Basic Contract and we are to advise them as soon as possible regarding this.

"We note that this is scheduled for shipment January 2nd. Will you please see if you can accelerate shipment and let us know by return mail."

In mid-October, Roberts made a telephone appeal to E. Dykhuis of Crane for improved delivery on orders G-3795 and G-3795 ADD. In mid-July 1969, and on November 5, 1969, Roberts contacted Crane urging improved delivery on order G-3796.

On November 21, 1969, Roberts wired Crane advising that purchase order G-3795 had been terminated by the government, and that Crane should stop all production on order G-3795, which Crane did. In this wire, Roberts further advised, "We are trying to have all the above orders re-instated." As of this date, the status of order G-3795 was as follows: 80 ¼" valves - 100 percent complete; 64 ¾" valves, 95 percent complete; and 70 1" valves 100 percent complete, a total of 46 valves on the order had been shipped as of November 17, 1969. The status of order G-3795 ADD on this date was as follows: 34 ¾" valves 35 percent complete.

On December 16, 1969, Roberts again wired Crane, this time advising that its purchase order G-3796 had been terminated by the government and advising Crane to stop all production on order G-3796, which Crane did. As of this date, the status of order G-3796 was as follows: 16 ¾" valves 100 percent complete; 22 ¾" valves 85 percent complete, and 39 ¼" valves 85 percent complete.

Roberts' contracts were terminated by the DSA for failure to meet the delivery dates specified in those contracts.

After termination, Roberts attempted to get the contracts reinstated. On January 15, 1970, Foy of Roberts wrote Crane advising that it would greatly benefit Roberts in either the settlement or the reinstatement of the contracts if Roberts could show a delay in purchase material from Crane's sources as the cause of the failure to meet the government's delivery dates. Crane was asked to see if any such delays existed. On January 19, 1970, Ausema of Crane responded, stating that the reason for the delay was Roberts' delay in placing the orders with Crane. On February 2, 1970, Foy wrote two identical letters to Crane concerning orders G-3795 and G-3796. These stated: "Negotiations are being conducted with the Defense Supply Agency on the above contract.

"Pending final decision, it is suggested that all material be retained in order that rapid completion can be accomplished as soon as approval is received.

"We will keep you posted on developments."  The contracts were never reinstated by the DSA.

On January 22, 1970, Crane sent Roberts its invoice in the amount of $32,211.75, less credits of $12,278.35, for a net of $19,933.40, representing termination charges for the completed or partially completed valves on order G-3795.  On November 30, 1970, Crane sent Roberts its invoice in the amount of $9,895.45, representing termination charges for completed or partially completed valves on order G-3796.  Neither of these has been paid.

On appeal, Roberts contends that the judgment of the District Court was not supported by the evidence.  Roberts' defense was that it was justified in terminating its orders with Crane because Crane failed to meet the required delivery dates under their agreement.  This also is the basis of Roberts' cross-petition.

This transaction is governed by the Uniform Commercial Code.  Section 1-105, U. C. C., provides that absent a contrary agreement between the parties (and none is alleged in this case) the act applies to transactions bearing an appropriate relation to this state.  Roberts is a Nebraska corporation, located in Omaha, Nebraska.  The products which were the subject of the orders, valves to be used in nuclear submarines, are "goods" within the definition of section 2-105, U. C. C.  Consequently, by virtue of section 2-102, U. C. C., which reads:  "Unless the context otherwise requires, this article applies to transactions in goods * * *."

Section 2-204 (1), U. C. C., provides:  "A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."

Section 1-201 (3), U. C. C., defines "agreement" as follows:  " 'Agreement' means the bargain of the parties in fact as found in their language or by implication

from other circumstances including course of dealing or usage of trade or course of performance as provided in this act * * *."

Comment 1 to section 2-309, U. C. C., states that: "Agreement as to a definite time [for shipment or delivery] * * * may be found in a term implied from the contractual circumstances, usage of trade or course of dealing or performance as well as in an express term."

While the District Court made no specific findings of fact, implicit in its judgment for Crane is a determination that Crane's delivery dates on orders G-3795 and G-3796 were *not August 25 and November 30, 1969*, respectively (the same delivery dates required of Roberts under its contract with the DSA) and that consequently Crane had not breached its contractual agreement with Roberts, and therefore Roberts' termination was not justified.

The record shows that Roberts requested delivery dates of August 25 and November 30, 1969, when it placed the orders with Crane. Crane clearly and unequivocally rejected these delivery dates in its letter on February 12, 1969, to Roberts, and instead promised delivery dates 5 months later on order G-3795 and 2 months later on order G-3796. Despite this, and despite the alleged visit of Crane's Mr. Pagratis to Roberts' Omaha office, where he allegedly promised to meet or improve upon the delivery dates originally requested of Crane, Roberts' sole response to Crane was its letter dated March 3, 1969, where Roberts wrote: "We acknowledge receipt of your letter of February 12, 1969 and ask that you please exert every effort to conform to the delivery date which we have specified." On August 4, 1969, Mr. Karpen of Roberts wrote Mr. Seebauer of Crane concerning order G-3795, "We note that this is scheduled for shipment January 2nd. Will you please see if you can accelerate shipment." The record is devoid of any notice or mention to Crane from Roberts that it had breached the contract by failing to meet

the required delivery dates. As late as October 1969, Roberts was still appealing to Crane to expedite shipment on order G-3795.

The case below was tried to the court. "Under such circumstances, the judgment has the effect of the verdict by a jury and will not be set aside unless clearly wrong." Custom Leasing, Inc. v. Carlson Stapler & Shippers Supply Inc., 195 Neb. 292, 237 N. W. 2d 645 (1976). See, also, Siefford v. Housing Authority of City of Humboldt, 192 Neb. 643, 223 N. W. 2d 816 (1974); American Standard Ins. Co. v. Tournor, 186 Neb. 585, 185 N. W. 2d 267 (1971).

There is sufficient evidence in the record to support the District Court's implicit determination that Crane's delivery dates on Roberts' orders G-3795 and G-3796 were not the same as Roberts' required delivery dates under its DSA contracts, August 25 and November 30, 1969, respectively. Consequently there is no merit to Roberts' contention that it was justified in terminating these orders. Roberts' cross-petition must likewise fail.

There is also sufficient evidence in the record to support the amount of the judgment. These valves were specially ordered. Testimony was given that it would be highly unusual to find another placement for the kind of parts involved here. Crane was able to dispose of some of the material and Roberts was given full credit for these amounts.

The judgment of the District Court is correct and is affirmed.

AFFIRMED.

CLINTON, J., concurs in the result.