Patricia A. SANTILLAN, Appellant,

v.

John PETTIT, Respondent.

No. WD 47635.

Missouri Court of Appeals, Western District.

Jan. 18, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 1, 1994.

Lynne J. Bratcher, Kansas City, for appellant.

Terry M. Evans, Trenton, for respondent.

Before KENNEDY, P.J., and ULRICH and SPINDEN, JJ.

SPINDEN, Judge.

Patricia A. Santillan sued John Pettit for the wrongful death of her 16-year-old daughter, Sherry Anderson, on the theory that Pettit was racing with the car in which Anderson was riding, and the race led to the car's crash and Anderson's death. The jury returned a verdict for Pettit. Santillan appeals, asserting errors in the instructions. We affirm.

Anderson was riding in a car driven by Danny Huffman during the night of February 22, 1991. The car skidded past a stop sign without stopping and collided with a pickup. Anderson, Huffman, and two other passengers in the car were killed. Santillan's theory for recovery against Pettit was negligence for racing with Huffman before the collision. At trial the parties disputed whether Pettit and Huffman had been racing. In their testimony, Pettit and a passenger in his car denied racing with Huffman. Anderson's stepfather testified that Pettit

admitted to him that Pettit and Huffman were drag racing when the accident happened. Pettit denied making the admission.

Pettit, Huffman, Anderson and four other teenagers were "cruising" in two cars when Huffman's car collided with the pickup at the intersection of Route F and Mo. 6 in Daviess County. The jury heard evidence that just before the accident Pettit's car was ahead of Huffman's car traveling north on Route F. Huffman tried to pass Pettit's car twice—both times on curves. The first time, Pettit's car went off the road, but Huffman moved his car over to let Pettit's car back on the road and to stay in the lead. After traveling behind Pettit for a quarter mile, Huffman tried a second time to pass. When Huffman's car pulled even with Pettit's car, Pettit "punched [the accelerator] briefly," but let it up as Huffman's car passed at 60 to 70 miles an hour. Huffman's car continued ahead of Pettit's car. Seconds later, Huffman's car collided with a pickup.

■ In her first point, Santillan asserts that the trial court erred in adding time qualifiers to the verdict-directing instruction and to the defendant's converse instruction. Those instructions said:

### Instruction No. 6

Your verdict must be for plaintiff Patricia Santillan if you believe:

First, plaintiff Patricia Santillan was Sherry Anderson's mother, and

Second, defendant John Pettit was racing with Danny Huffman *at the time of the automobile collision,* and

Third, defendant John Pettit was thereby negligent, and

Fourth, such negligence either directly caused the death of Sherry Anderson or combined with the acts of Danny Huffman to directly cause the death of Sherry Anderson.[1]

### Instruction No. 7

Your verdict must be for defendant John Pettit unless you believe defendant John

---

1. We added the emphasis.

Pettit was racing with Danny Huffman *at the time of the automobile collision.*[2]

Santillan argues that the trial court erred in adding the italicized words because they were too restrictive:

> Defendant's racing can still be the cause of the damage even though the racing stopped before the instant of collision.... Obviously, requiring the jury to determine that defendant was racing at the time of the collision ignores that the jury could have considered that defendant was racing some two to three seconds before the collision, at which time it was impossible for Huffman to have avoided the collision.

■ The test for an instruction not taken from the Missouri Approved Jury Instructions (MAI) is whether the instruction follows the substantive law and whether a jury can readily understand it. *Karnes v. Ray,* 809 S.W.2d 738, 740 (Mo.App.1991). Instructions Nos. 6 and 7 satisfy this test.

■ Santillan premised her theory of recovery on Pettit's and Huffman's joint negligence in racing. Generally, under that theory, individuals who race motor vehicles on public highways are jointly negligent[3] and are jointly liable for injuries inflicted to someone not involved in the race. *See* 60A C.J.S. *Motor Vehicles* § 297 (1969); 6 BLASHFIELD AUTOMOBILE LAW AND PRACTICE 3d § 257.2 (1966); Annotation, *Liability of Participant in Unauthorized Highway Race for Injury to Third Person Directly Caused by Other Racer,* 13 A.L.R.3d 431 (1967). The racers' joint liability continues as long as the race continues. *Saisa v. Lilja,* 76 F.2d 380, 381 (1st Cir.1935); *Finn v. Morgan,* 46 A.D.2d 229, 362 N.Y.S.2d 292, 297 (1974). So, the jury instructions should delineate the duration for the racing liability. *See Saisa,* 76 F.2d at 381; *Andreassen v. Esposito,* 90 N.J.Super. 170, 216 A.2d 607, 610–11 (1966).

Pettit's liability depended on his racing with Huffman at the time of the collision. The time qualifier set out in explicit, understandable terms a component essential to Santillan's theory of recovery. Giving every inference favorable to Santillan's theory, we fail to discern error with the instruction. That evidence suggested that, if the youths were racing at all, they were still racing when the crash occurred. The evidence indicated that Huffman's car was still passing Pettit's car when Huffman's car began to leave tire skid marks in the passing lane, and it continued to skid for 300 feet before crashing into the pickup two to three seconds later. We conclude that the instruction properly hypothesized Santillan's theory. Apparently, the jury rejected Santillan's theory and concluded that the youths were not racing. We deny Santillan's first point.

In her next point, Santillan maintains that the trial court erred in submitting this instruction concerning damages:

### Instruction No. 9

If you find in favor of plaintiff, then you must award plaintiff such sum as you believe will fairly and justly compensate *plaintiff* for any damages you believe *she* sustained and is reasonably certain to sustain in the future as a direct result of the fatal injury to Sherry Anderson.

You must not consider grief or bereavement suffered by reason of the death.[4]

Santillan argues that the court should have replaced the italicized words with "the survivors of Sherry Anderson." According to Santillan, the instruction did not comply with the notes to MAI 5.01 which direct substitution of "plaintiff" with "survivors of the decedent" when not all beneficiaries are joined as plaintiffs in a wrongful death action. MAI 5.01, n. 1 (1991). Anderson was survived by her father who was not a party to the action.

2. We added the emphasis.

3. In *Gay v. Samples,* 227 Mo.App. 771, 57 S.W.2d 768, 769 (1933), the court affirmed joint tort liability of two motorists who drove their cars side-by-side at a high speed for a half mile on a public highway. Only one of the cars was involved in a collision with a third vehicle. The court determined that both drivers committed a

joint tort and were, therefore, jointly and severally liable for the damages to the third vehicle; however, the court decided that it did not need to determine whether the two drivers were "racing" within the technical meaning of the term.

4. We added the emphasis.

■ We reject the point. Any error in a damage instruction is harmless error when the jury finds no liability on the substantive claim. *Insurance Company of North America v. Skyway Aviation, Inc.,* 828 S.W.2d 888, 894 (Mo.App.1992). The jury found for Pettit on the wrongful death claim and, therefore, never reached the issue of damages.

We, therefore, affirm the trial court's judgment.

All concur.