CLEMENS MOBILE HOMES, INC., APPELLANT, V. LIBERTY
HOMES, INC., APPELLEE, IMPLEADED WITH WESTERN
NATIONAL BANK OF SCOTTSBLUFF, NEBRASKA,
INTERVENER-APPELLANT.

262 N. W. 2d 463

Filed February 22, 1978.   No. 41327.

James R. Hancock of Hancock & Shaver and Richard S. Kleager, for appellants.

Wright & Simmons, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

WHITE, C. J.

This is an action for damages resulting from an alleged breach of contract. In its amended petition the plaintiff alleged that the defendant breached its agreement by failing to deliver 27 mobile homes and that as a result the plaintiff was damaged in the sum of $8,775. The plaintiff alleged that it was entitled to set off this sum, and the sum of $6,000 representing back charges resulting from the defendant's alleged breach, against a sum which the plaintiff owed the defendant. The defendant answered that it had fully complied with the terms of its agreement with the plaintiff, and filed a cross-petition for the sum of $13,482, plus interest, against the plaintiff and the intervener, Western National Bank of Scottsbluff, representing the agreed price of three mobile homes delivered pursuant to the agreement but not paid for.

The case was tried to the court which, on January 4, 1977, found that the plaintiff had failed to sustain

its burden of proof as to the matters set forth in its amended petition. The court further found that the plaintiff and the intervener, Western National Bank, were indebted to the defendant in the amount of $13,482, with interest of 6 percent from September 9, 1972. Both the plaintiff and the intervener filed motions for a new trial which were overruled and now appeal. We affirm the judgment of the District Court.

In its amended petition, the plaintiff first alleged the terms of its agreement with the government and then alleged:

"At the time of said agreement between Plaintiff and the U.S.A., at Exhibit 'A', Plaintiff also entered into an agreement with the Defendant wherein the Defendant would furnish to the Plaintiff 200 mobile home units so that Plaintiff could fulfill it's agreement with the Government set forth in Exhibit 'A'. Defendant agreed to furnish such units and to deliver them to the site designated by the U.S.A. within the time scheduled that would be permitted by the U.S.A."

The plaintiff is a mobile home dealer with its principal place of business in Scottsbluff, Nebraska. The defendant is a manufacturer of mobile homes with its principal place of business in Goshen, Indiana. In the summer of 1972, there were two flood disasters, the first occurring at Rapid City, South Dakota, and the second in the Wilkes-Barre, Pennsylvania, area. As a result of these floods many people were left homeless. Consequently, under the Disaster Relief Act of 1970, the Department of Housing and Urban Development (HUD) entered into contracts with various mobile home dealers for the delivery of mobile homes to the disaster areas.

The plaintiff contracted with HUD to deliver homes to the Rapid City flood disaster area. In connection with this contract, Jerald Clemens, president of the plaintiff, contracted with the defendant,

dealing with its vice president, Ray Gans, to supply homes for plaintiff's government contract for the Rapid City area.

While the plaintiff and the defendant were working in the Rapid City area the Pennsylvania flood occurred. Clemens asked Gans if Liberty would be interested in filling contracts which the plaintiff might obtain from HUD for the Pennsylvania area. Liberty indicated that it would. Clemens then proceeded to secure for the plaintiff a government contract for the provision of mobile homes to the Pennsylvania flood disaster area.

On June 29, 1972, the plaintiff solicited HUD for a contract which was subsequently awarded to it. The plaintiff's contract with the government provided, under "Estimated Requirements":

"1. Upon award of a contract and for 90 days thereafter, the Government shall order and the Contractor shall furnish a minimum quantity of 25 mobile home units.

"2. In addition to the minimum quantity provided for herein, the Government, may, but shall not be obligated to, order and the Contractor shall furnish an additional quantity of 75 mobile home units for a total maximum quantity of 100 mobile home units with an optional 100% increase in the maximum."

The government contract further stated:

"2. Delivery Requirements

"Delivery of a minimum of 25 mobile home units shall be completed not later than 7 work-days after verbal notice to deliver. A delivery rate of five (5) per day shall be maintained thereafter."

Clemens indicated on the government contract that he desired the plaintiff to be considered as selling agent for 200 mobile homes, the maximum amount, at an FOB price of $4,399.

Prior to the government contract being actually awarded to the plaintiff, the plaintiff entered into a contract with the defendant to supply the mobile

homes which the plaintiff intended to sell to the government. Negotiations on this contract took place by telephone. Exhibit 14 was a letter from the defendant, signed by Ray Gans, and dated July 21, 1972. Gans testified that after he prepared this letter, he called Clemens and read the letter verbatim to him and that Clemens agreed to its contents. The letter, in part, stated:

"The following is intended to spell out our agreement regarding H. U. D.-Pennsylvania units and will provide the basis for our supply of mobile homes to you for this program. * * *

"B. Shipments can be made at a minimum rate of 5 per working day for a quantity of 200 homes.

"C. Complete price FOB Syracuse, Indiana, is $4074."

As it was anticipated that HUD would take considerable time to make its payments to the plaintiff, and the defendant did not want to wait, Western National Bank of Scottsbluff, Nebraska, guaranteed payment to Liberty within 15 days after acceptance of each home by HUD.

Exhibit 10 was a letter dated August 1, 1972, from the defendant, signed by Ray Gans, to HUD supplying information concerning shipments by Liberty of HUD disaster mobile homes. This letter listed the following:

"B. Williamsport, Pennsylvania deliveries

"1. For Clemens Mobile Homes - Contract No. H-3031, 200 homes at 5 per working day from our Syracuse, Indiana plant."

Clemens testified the plaintiff's HUD contract was entered into on July 18 or 19, 1972, and he gave Liberty oral notice then to commence delivery. Ray Gans testified that notice was given on July 21, 1972. The record indicates the first mobile homes from the defendant, 13 in number, were delivered on July 27, 1972. By July 31, 1972, 50 mobile homes had been delivered. A total of 173 mobile homes were de-

livered by the defendant as of September 8, 1972.

The plaintiff's contract with the defendant, as evidenced by exhibit 14, required delivery at a minimum rate of 5 per working day. If notice to commence delivery was given to the defendant on July 21, 1972, then as of September 8, 1972, 170 mobile homes would have been due (34 working days, Labor Day excluded, x 5 mobile homes).

On September 8, 1972, the plaintiff received a termination notice on its government contract "for failure to deliver the required contract units within the delivery schedule." The plaintiff's failure to deliver properly was found not excusable. The plaintiff did not appeal this decision. The record indicates that the government terminated all contracts for receipt of mobile homes from various dealers at the same time.

Clemens testified he told Gans that the plaintiff would accept delivery from any of the defendant's factories. He stated he discussed the government's requirements with Gans and was told by him that there would be no problem. Clemens further testified that his contract with the defendant for the Rapid City area was similar in its delivery requirements to the Pennsylvania one and that pursuant to the former, defendant delivered in excess of five per day. Regarding the Pennsylvania contract, he stated that Gans told him that he would deliver a minimum of five per day in accordance with the government requirements. Clemens testified that the terms of the government contract were thoroughly discussed.

Gans testified that from the very beginning Clemens wanted more homes. He stated, "I was aware that he was originally asked to deliver seven days a week, five a day and I told him that I could not do that. My commitment was five a day I had to take care of my dealers and I would do everything that I could to take care of him." Gans testified he never

read the plaintiff's Pennsylvania HUD contract and did not know its exact contents prior to the suit.

The record shows that the defendant, subsequent to the plaintiff's contract in Pennsylvania, entered into a direct contract with the government to provide 100 mobile homes to the Pennsylvania flood disaster area, supplying these homes from its factories in Pennsylvania. The plaintiff argues that this shows the defendant had the capacity to deliver more homes to the plaintiff than it did and that the defendant should have first fulfilled its contract with the plaintiff before entering into this direct contract.

On cross-examination Clemens testified that by August 5th for certain and probably in July he knew, from his close association with the government, that "they would terminate when they did terminate." He stated he was told the government would terminate in September. He further stated that before he signed the government contract he knew the government was going to terminate sometime in September but did not know the exact date.

The judgment of the trial court in an action at law, where a jury has been waived, has the effect of a verdict of a jury and it will not be set aside on appeal unless clearly wrong. Crane Co. v. Roberts Supply Co., 196 Neb. 67, 241 N. W. 2d 516 (1976).

There is ample evidence in the record to support a conclusion by the District Court that the contract between the plaintiff and the defendant was not as alleged by the plaintiff in its amended petition, but rather as contended by the defendant and evidenced by exhibit 14 to provide 200 mobile homes at a minimum rate of 5 per working day, and that as of September 8, 1972, the defendant was in full compliance with its agreement with the plaintiff.

If the plaintiff had desired delivery at a rate of 5 per day, 7 days per week, it could have specifically included this in an agreement. The defendant was not required to perform beyond the minimum re-

quirements of the contract, despite the fact that it may have elected to perform above the minimum standards on a separate and distinct prior contract; nor was the defendant precluded from later entering into a direct contract with the government.

The judgment of the District Court is correct and is affirmed.

AFFIRMED.