Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/07/2018 08:10 AM CDT

Lindsay International Sales & Service, LLC, appellee,
v. Michael J. Wegener, an individual, and
Jerome Pribil, an individual, appellants.

___ N.W.2d ___

Filed September 7, 2018.    No. S-16-1051.

1.  **Directed Verdict: Appeal and Error.** In reviewing a trial court's rul-
    ing on a motion for directed verdict, an appellate court must treat the
    motion as an admission of the truth of all competent evidence submit-
    ted on behalf of the party against whom the motion is directed; such
    being the case, the party against whom the motion is directed is entitled
    to have every controverted fact resolved in its favor and to have the
    benefit of every inference which can reasonably be deduced from
    the evidence.
2.  **Directed Verdict: Evidence.** A directed verdict is proper at the close
    of all the evidence only when reasonable minds cannot differ and can
    draw but one conclusion from the evidence, that is, when an issue
    should be decided as a matter of law.
3.  **Jury Instructions.** Whether a jury instruction is correct is a question
    of law.
4.  **Judgments: Appeal and Error.** When reviewing questions of law, an
    appellate court has an obligation to resolve the questions independently
    of the conclusion reached by the trial court.
5.  **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules
    apply, the admissibility of evidence is controlled by such rules; judicial
    discretion is involved only when the rules make discretion a factor in
    determining admissibility.
6.  **Trial: Evidence: Appeal and Error.** A trial court has the discretion to
    determine the relevancy and admissibility of evidence, and such deter-
    minations will not be disturbed on appeal unless they constitute an abuse
    of that discretion.
7.  **Judges: Words and Phrases.** A judicial abuse of discretion exists if
    the reasons or rulings of a trial judge are clearly untenable, unfairly

- 2 -

Nebraska Supreme Court Advance Sheets
301 Nebraska Reports
LINDSAY INTERNAT. SALES & SERV. v. WEGENER
Cite as 301 Neb. 1

depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

8. **Motions for New Trial: Appeal and Error.** An appellate court reviews a denial of a motion for new trial for an abuse of discretion.

9. **Contracts: Words and Phrases.** A lack of consideration means no contract is ever formed because no consideration exists or none was intended to pass. A failure of consideration, on the other hand, means the contract is valid when formed but becomes unenforceable because the performance bargained for has not been given.

10. **Directed Verdict: Appeal and Error.** When it follows logically from a jury's findings that a theory on which a directed verdict was granted could not have been successful, the directed verdict cannot be said to have affected the outcome and is, at most, harmless error.

11. **Trial: Evidence.** Evidence that is irrelevant is inadmissible.

12. **Evidence.** Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

13. ____. Relevancy requires only that the degree of probativeness be something more than nothing.

Appeal from the District Court for Platte County: Robert R. Steinke, Judge. Affirmed.

Stephen L. Ahl and Krista M. Carlson, of Wolfe, Snowden, Hurd, Luers & Ahl, L.L.P., and Barry D. Geweke, of Stowell & Geweke, P.C., L.L.O., for appellants.

John M. Lingelbach and John V. Matson, of Koley Jessen, P.C., L.L.O., for appellee.

Heavican, C.J., Cassel, Stacy, Funke, and Papik, JJ., and Schreiner, District Judge.

Papik, J.

Lindsay International Sales & Service, LLC (Lindsay), sued Michael J. Wegener and Jerome Pribil in the district court for Platte County to collect amounts Lindsay claimed were due on personal guaranties. The district court granted Lindsay's motion for a directed verdict on certain affirmative defenses raised by Wegener and Pribil and instructed the jury

accordingly. The jury returned a verdict in favor of Lindsay for the full amount sought. Wegener and Pribil now appeal. They challenge the directed verdict, the jury instructions, the admission of evidence concerning their personal finances, and the denial of their motion for new trial. Finding no reversible error, we affirm.

## BACKGROUND

*Initial Discussions Between Wegener,*
*Pribil, and Lindsay.*

This case has its genesis in Wegener and Pribil's participation in an agricultural business venture in Mexico. Wegener and Pribil and another individual, Isaak Wall, also known as Isaak Wall Vogt, formed a business entity in Mexico called Ko'ol Agricola S.P.R. de R.L. de C.V. (Ko'ol Ag). Wegener, Pribil, and Wall planned to have Ko'ol Ag purchase or lease land in Mexico and raise crops there.

Wegener, Pribil, and Wall planned to take advantage of their respective backgrounds to operate Ko'ol Ag. Because Wall had ownership interests in at least two agricultural equipment dealers and ties to Mexico, he would be responsible for obtaining and setting up irrigation pivots on behalf of Ko'ol Ag. Wegener and Pribil, both of whom conduct farming operations in Nebraska, would provide the finances and farming expertise.

Beginning in November 2012, Wegener and Pribil had discussions with agents of Lindsay about purchasing pivots for the farming operation in Mexico. Wegener and Pribil indicated their desired terms for the purchase of pivots. The global director of credit for Lindsay's parent company told Wegener and Pribil that to obtain those terms from Lindsay, they would need to provide personal financial statements and provide personal guaranties for the amount owed for the pivots.

Wegener and Pribil also contend that Lindsay made representations to them about Wall and one of the equipment dealers in which he had an ownership interest, IJS Irrigation, LLC (IJS). The record contains varying accounts of those

representations. According to Wegener and Pribil, they were told that the pivots should be sold through IJS and that Wall and IJS were trustworthy and suitable partners for Wegener and Pribil in the pivot transaction.

*Wegener and Pribil Agree to*
*Personal Guaranties.*

In December 2012, Wegener and Pribil provided personal guaranties to Lindsay. The agreements identified IJS as the principal debtor by describing the debt for which Wegener and Pribil were providing guaranties as follows: "For and in consideration of any existing indebtedness to [Lindsay] of IJS Irrigation, LLC invoices referencing customer KO'OL AGRICOLA S.P.R. de R.L. de C.V."

In the guaranties, Wegener and Pribil agreed to guarantee the payment of any of the above-described debt in accordance with the terms of any agreement between the principal debtor and Lindsay. They also agreed that in the event of a default by the debtor, Lindsay would not be required to proceed first against the debtor, but could immediately proceed against them.

*Pivots Are Ordered and Shipped.*

After the parties executed the guaranty agreements, Lindsay received orders for 16 complete pivots. Neither Wegener nor Pribil placed the orders. Wegener believed that they were placed by Wall.

The resulting invoices issued by Lindsay indicated that the pivots were sold to IJS. The invoices referenced Ko'ol Ag in the item description. While the parties agree that the pivots were all shipped to the same shipping warehouse in Florida, they dispute whether all of the pivots were actually transferred to IJS. Pointing to some bills of lading that do not list the recipient of the pivot as IJS, Wegener and Pribil contend that some of the pivots were transferred to other entities. And while it is undisputed that at least some of the pivots made it to Mexico, Wegener and Pribil assert that none of the pivots were placed on Ko'ol Ag's land.

- 5 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
301 NEBRASKA REPORTS
LINDSAY INTERNAT. SALES & SERV. v. WEGENER
Cite as 301 Neb. 1

*Dispute Arises Over Payment.*

Months after the pivots were shipped, Wegener and Pribil sent letters to Lindsay attempting to cancel the guaranty agreements. Lindsay responded by demanding payment.

When Lindsay did not receive payment, it filed suit against Wegener and Pribil. Lindsay alleged that it sold IJS goods for the Ko'ol Ag account on credit, that IJS had defaulted in the amount of $1,019,795.38, and that Wegener and Pribil were obligated to cover the IJS debt.

Wegener and Pribil denied that they were obligated to pay and asserted a number of affirmative defenses including false representation, fraud in the inducement, failure of consideration, impairment of collateral, deprivation of the right to be subrogated to the benefit of all security, and violation of Nebraska's Uniform Deceptive Trade Practices Act (UDTPA), Neb. Rev. Stat. §§ 87-301 to 87-306 (Reissue 2014). The matter proceeded to a jury trial.

*Trial.*

At trial, the parties presented the evidence recounted above and the district court received Wegener's and Pribil's financial statements, over their relevance objections. After Wegener and Pribil rested their case, Lindsay moved for a directed verdict on Wegener and Pribil's affirmative defenses. The district court granted a directed verdict to Lindsay on the affirmative defenses of failure of consideration, impairment of collateral, deprivation of the right to be subrogated to the benefit of all security, and the UDTPA. The district court overruled Lindsay's request for a directed verdict on the defenses of false representation and fraud in the inducement.

As requested by Wegener and Pribil, the district court instructed the jury on the affirmative defense of material misrepresentation. Also at Wegener and Pribil's request, it instructed the jury that Lindsay was entitled to recover only "the total amount you determine is owed and unpaid on the IJS indebtedness for the pivots." But in accordance with the directed verdict, the district court declined to submit Wegener

- 6 -

Nebraska Supreme Court Advance Sheets
301 Nebraska Reports
LINDSAY INTERNAT. SALES & SERV. v. WEGENER
Cite as 301 Neb. 1

and Pribil's proposed instruction on the definition of fraud under the UDTPA.

In closing arguments, counsel for Wegener and Pribil argued, among other things, that the evidence showed IJS did not receive all of the pivots and that thus, Wegener and Pribil could not be liable for the full amount claimed by Lindsay. The jury, however, returned a unanimous verdict in favor of Lindsay for $1,019,795.38, the full amount owing on the invoices. The district court ultimately entered a judgment on the jury verdict.

Following the verdict, Wegener and Pribil moved for a new trial. They alleged irregularities in the proceedings that prevented a fair trial, excessive damages resulting from passion or prejudice, error in assessing the amount of recovery, insufficient evidence to support the verdict, and error of law at trial. The district court ultimately overruled the motion.

Wegener and Pribil now appeal. We have determined that Wegener and Pribil's notice of appeal was timely filed. See *Lindsay Internat. Sales & Serv. v. Wegener*, 297 Neb. 788, 901 N.W.2d 278 (2017).

## ASSIGNMENTS OF ERROR

Wegener and Pribil assign the following errors, condensed, restated, and reordered: The district court erred (1) in directing a verdict for Lindsay on the affirmative defense of impairment of collateral, (2) in directing a verdict for Lindsay on the affirmative defense of failure of consideration, (3) in directing a verdict for Lindsay on the affirmative defense of violation of the UDTPA, (4) in failing to give their proposed jury instruction regarding the UDTPA, (5) in admitting evidence of their personal financial conditions, and (6) in failing to grant their motion for new trial.

## STANDARD OF REVIEW

[1,2] In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on

- 7 -

Nebraska Supreme Court Advance Sheets
301 Nebraska Reports
LINDSAY INTERNAT. SALES & SERV. v. WEGENER
Cite as 301 Neb. 1

behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Armstrong v. Clarkson College*, 297 Neb. 595, 901 N.W.2d 1 (2017). A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law. *Id.*

[3,4] Whether a jury instruction is correct is a question of law. *Rodriguez v. Surgical Assocs.*, 298 Neb. 573, 905 N.W.2d 247 (2018). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Id.*

[5,6] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *Id.* A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. *Id.*

[7] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

[8] An appellate court reviews a denial of a motion for new trial for an abuse of discretion. *Facilities Cost Mgmt. Group v. Otoe Cty. Sch. Dist.*, 298 Neb. 777, 906 N.W.2d 1 (2018).

## ANALYSIS

*Impairment of Collateral
Affirmative Defense.*

In the section of their operative answer listing affirmative defenses, Wegener and Pribil alleged that they should be released from liability under the "impairment of collateral

doctrine" and as a result of Lindsay's acts that deprived them "of their right to be subrogated to the benefit of all security." The district court granted Lindsay a directed verdict on these affirmative defenses. Wegener and Pribil contend it should not have done so.

As the following discussion will demonstrate, the concepts Wegener and Pribil asserted as separate affirmative defenses and argue separately on appeal are actually part and parcel of the same affirmative defense. For reasons we will explain, we find that this defense could not apply in these circumstances, and thus, the district court correctly granted Lindsay a directed verdict.

This court has previously recognized that a guarantor can be released from liability as a result of a creditor's actions or omissions that impair collateral securing the principal debt at issue. See, e.g., *Custom Leasing, Inc. v. Carlson Stapler & Shippers Supply, Inc.*, 195 Neb. 292, 237 N.W.2d 645 (1976). We have previously referred to the defense as "impairment of collateral." *Builders Supply Co. v. Czerwinski*, 275 Neb. 622, 635, 748 N.W.2d 645, 656 (2008).

The impairment of collateral defense has its roots in the guarantor's subrogation right to collateral securing the underlying debt. See *Custom Leasing, Inc., supra.* That is, if the principal debtor fails to meet its obligation in such a transaction and the creditor enforces the guaranty, "a guarantor has the right to step into the shoes of the creditor and sue the debtor for collateral securing the debt." See *Century 21 Prods. v. Glacier Sales*, 129 Wash. 2d 406, 412, 918 P.2d 168, 170 (1996). Because acts or omissions of the creditor that result in the collateral's unavailability deprive the guarantor of its right of subrogation, a guarantor is generally released by such acts or omissions. See *Custom Leasing, Inc.*, 195 Neb. at 299, 237 N.W.2d at 649 ("[w]hether the guarantor is entitled to a full discharge or only pro tanto, it is released from its liability to the extent of the injury caused by the willful or negligent acts of [the creditor]").

- 9 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
301 NEBRASKA REPORTS
LINDSAY INTERNAT. SALES & SERV. v. WEGENER
Cite as 301 Neb. 1

If its name were not enough, the preceding discussion should make clear that in order for the impairment of collateral defense to apply, the underlying debt must be secured by collateral. See, e.g., *Myers v. Bank of Niobrara*, 215 Neb. 29, 31-32, 336 N.W.2d 608, 610 (1983) ("[i]t may be true that if a *secured* party . . . impairs a guarantor's ability to satisfy any obligation arising under the agreement of guaranty by releasing the *collateral securing that loan*, said guarantor's obligation is then released") (emphasis supplied); Restatement (Third) of Suretyship and Guaranty § 42 at 190 (1996) (recognizing that defense is available "[i]f the underlying obligation is *secured by a security interest in collateral* and the obligee impairs the value of that interest") (emphasis supplied). If the debt is not secured, there is no collateral to impair and no subrogation right to protect. See *Estate of Muscato v. Northwest Nat'l Bk.*, 181 Ill. App. 3d 44, 48, 536 N.E.2d 872, 875, 129 Ill. Dec. 822, 825 (1989) ("[i]t is axiomatic that because the loan was unsecured, no collateral could have been impaired").

Wegener and Pribil could not successfully assert the impairment of collateral defense because it is available only when the guarantor has a subrogation right to collateral. There is no evidence that Lindsay had a security interest in the pivots, and Wegener and Pribil do not even attempt to argue that such evidence exists.

Because there is no evidence that collateral was to secure the underlying debt, the principal cases Wegener and Pribil rely upon in support of their argument that the district court erred by directing a verdict on their impairment of collateral defense are inapplicable. In those cases, a creditor either impaired or failed to acquire a security interest as required by a contract, to the ultimate detriment of the guarantor. See, e.g., *National Bank of Commerce Trust & Sav. Assn. v. Katleman*, 201 Neb. 165, 266 N.W.2d 736 (1978); *Custom Leasing, Inc., supra*. In this case, however, the transaction did not involve a security interest. As a result, the impairment of collateral

defense could not apply and the district court correctly granted a directed verdict for Lindsay.

*Failure of Consideration*
*Affirmative Defense.*

Wegener and Pribil also contend that the district court erred by granting Lindsay a directed verdict on their affirmative defense of failure of consideration. Again, we find no basis to reverse the district court's decision.

Wegener and Pribil argue that there was a failure of consideration in that the pivots Lindsay agreed to sell were not transferred to the entity that purchased them. Specifically, Wegener and Pribil contend that because Lindsay failed to perform its obligations to the principal debtor, the consideration failed and Wegener and Pribil's obligations under the guaranties were eliminated or at least diminished.

[9] Lindsay responds that there was sufficient consideration for the guaranties because Lindsay extended credit to IJS in reliance on Wegener's and Pribil's promises to pay if IJS did not. Lindsay's response appears to confuse "failure of consideration" with the separate concept of "lack of consideration." "A lack of consideration means no contract is ever formed because no consideration exists or none was intended to pass." *Federal Land Bank of Omaha v. Woods*, 480 N.W.2d 61, 66 (Iowa 1992). A failure of consideration, on the other hand, "means the contract is valid when formed but becomes unenforceable because the performance bargained for has not been given." *Id*. See, also, 3 Richard A. Lord, A Treatise on the Law of Contracts by Samuel Williston § 7.11 (4th ed. 2008) (distinguishing these concepts).

Some courts have recognized that a guarantor can avoid liability on a guaranty through the affirmative defense of failure of consideration by showing that the creditor failed to render the performance for which the guarantor agreed to guarantee payment. See, e.g., *Walcutt v. Clevite Corporation*, 13 N.Y.2d 48, 191 N.E.2d 894, 241 N.Y.S.2d 834 (1963).

- 11 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
301 NEBRASKA REPORTS
LINDSAY INTERNAT. SALES & SERV. v. WEGENER
Cite as 301 Neb. 1

Wegener and Pribil claim these circumstances are present here, and they make alternative arguments as to why that is the case.

First, they argue that there was a failure of consideration because Lindsay did not transfer the pivots to Ko'ol Ag. We reject this argument at the outset. Both the guaranties themselves and the invoices indicate that IJS was the debtor, not Ko'ol Ag. Lindsay did not have an obligation to transfer the pivots directly to Ko'ol Ag, and thus, Wegener and Pribil cannot premise a failure of consideration defense on any failure to effectuate such a transfer.

The alternative failure of consideration argument Wegener and Pribil assert is that the consideration failed because some pivots were not delivered to IJS. Because IJS was the principal debtor in the transaction, the claim that the consideration failed because IJS did not receive pivots on which Lindsay now seeks payment cannot be dismissed so quickly. Furthermore, there was some evidence introduced at trial—bills of lading for a few of the pivots that listed entities other than IJS as the recipient and testimony about at least one pivot's having borne a stamp suggesting it was sold to another entity—that Wegener and Pribil can point to in support of their argument that IJS did not receive the pivots.

The evidence summarized above, coupled with the requirement that we draw all inferences in favor of Wegener and Pribil in reviewing the grant of a directed verdict, might suggest grounds for reversal if it were not for the fact that Wegener and Pribil already presented these very arguments to the jury and the jury rejected them. While the district court granted Lindsay a directed verdict on the failure of consideration affirmative defense, as noted above, Wegener and Pribil asked for and received a jury instruction that Lindsay was entitled to recover "the total amount you determine is owed and unpaid on the IJS indebtedness for the pivots." Counsel for Wegener and Pribil contended that this instruction was justified by evidence suggesting some pivots were

- 12 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
301 NEBRASKA REPORTS
LINDSAY INTERNAT. SALES & SERV. v. WEGENER
Cite as 301 Neb. 1

not transferred to IJS and stated that the proposed instruction "goes back to [Wegener and Pribil's] defense of failure of consideration."

Not only did Wegener and Pribil convince the court that the jury should be instructed that they were liable only to the extent IJS was indebted to Lindsay; their counsel devoted extensive time in closing argument to the contention that some of the pivots were not transferred to IJS and asked the jury not to make Wegener and Pribil pay for pivots IJS did not even receive. The jury's award of damages in favor of Lindsay for the full amount claimed demonstrates that it rejected this argument. Under these circumstances, we find that the award of a directed verdict on the failure of consideration defense was, at most, harmless error.

It does not appear that a Nebraska appellate court has previously found that the grant of a partial directed verdict could amount to harmless error. However, we have held that a summary judgment can be harmless error when viewed in light of a jury's subsequent findings. In *Smith v. Colorado Organ Recovery Sys.*, 269 Neb. 578, 694 N.W.2d 610 (2005), a patient claimed, among other things, that an organ recovery service had acted negligently in not reviewing donor records and failing to inform the medical center that a certain preservative had been used. The district court granted summary judgment in favor of the recovery service. Upon the patient's appeal, we reasoned that any error in granting summary judgment was harmless, because the jury specially found no proximate cause as to one defendant and the jury's special finding on proximate cause was equally applicable to the organ recovery service.

[10] We find this reasoning in *Smith* instructive in the instant case and hold that when it follows logically from a jury's findings that a theory on which a directed verdict was granted could not have been successful, the directed verdict cannot be said to have affected the outcome and is, at most, harmless error. A number of cases from other jurisdictions

- 13 -

Nebraska Supreme Court Advance Sheets
301 Nebraska Reports
LINDSAY INTERNAT. SALES & SERV. v. WEGENER
Cite as 301 Neb. 1

have recognized and applied this principle. See, e.g., *Goulet v. New Penn Motor Exp., Inc.*, 512 F.3d 34 (1st Cir. 2008); *Earle v. Benoit*, 850 F.2d 836 (1st Cir. 1988); *Janich Bros., Inc. v. American Distilling Co.*, 570 F.2d 848 (9th Cir. 1977); *St. Germain v. Husqvarna Corp.*, 544 A.2d 1283 (Me. 1988); *Steffensen v. Smith's Management Corp.*, 820 P.2d 482 (Utah App. 1991). See, also, *Russell v. May*, 306 Kan. 1058, 400 P.3d 647 (2017) (employing same analysis as cases above but finding error not harmless in that case).

In this case, we find that the jury's verdict would not have differed if a directed verdict had not been granted on the failure of consideration affirmative defense. By instructing the jury that Wegener and Pribil were liable only to the extent IJS was indebted to Lindsay, the district court required the jury to consider the very issue raised by the failure of consideration defense—whether IJS received the pivots and was thus indebted to Lindsay. If anything, the district court relieved Wegener and Pribil of the burden of proving their failure of consideration defense by embedding it within the amount Lindsay was owed, an issue on which Lindsay bore the burden of proof. Even after Wegener and Pribil argued that IJS did not receive all the pivots, however, the jury awarded Lindsay the full amount Lindsay claimed.

The jury clearly rejected the notion that IJS did not receive the pivots and was thus indebted to Lindsay for less than the full amount claimed. In doing so, the jury rejected the substance of the failure of consideration defense. The failure of consideration affirmative defense would not have succeeded even if the directed verdict had not been granted. The directed verdict is thus, at most, harmless rather than reversible error.

*Uniform Deceptive Trade
Practices Act.*

We now turn to Wegener and Pribil's claim that the district court erred by finding that a particular section of Nebraska's UDTPA was not a valid defense to Lindsay's claim. They

argue that Lindsay violated the UDTPA by fraudulently inducing them to sign the guaranty agreements through misleading representations about IJS. We find that the district court did not err by granting Lindsay a directed verdict on this issue.

Wegener and Pribil sought to implement the defense set forth in § 87-303.07:

> If a buyer or lessee is induced by [a deceptive trade practice] to enter into a sale or lease, the agreement is unenforceable by the seller or lessor and the buyer or lessee, at his or her option, may rescind the agreement or retain the merchandise delivered and the benefit of any services performed without any obligation to pay for them.

As the district court pointed out, this section protects a "buyer" or a "lessee." A familiar canon of statutory construction—expressio unius est exclusio alterius—suggests that § 87-303.07 does not protect guarantors. The aforementioned canon recognizes that "an expressed object of a statute's operation excludes the statute's operation on all other objects unmentioned by the statute." *Jacobson v. Shresta*, 288 Neb. 615, 623, 849 N.W.2d 515, 521 (2014). Applying the principle here, the fact that § 87-303.07 specifically lists buyers and lessees as those protected leads us to conclude that other categories of individuals—such as guarantors like Wegener and Pribil—are not.

After determining that § 87-303.07 protected only buyers and lessees, the district court went on to discuss our opinion in *Mutual of Omaha Bank v. Murante*, 285 Neb. 747, 829 N.W.2d 676 (2013). In that case, we held that certain defenses are personal to the principal debtor and thus a guarantor cannot escape liability by proving that the principal debtor is not liable pursuant to such a personal defense. The district court concluded that § 87-303.07 is such a personal defense and that thus, Wegener and Pribil, as guarantors, could not use it to avoid liability.

Whatever they may have been arguing before the district court, however, Wegener and Pribil do not make any argument to us that *the buyer* was deceived by Lindsay. Both the guaranties and the invoices make clear that the buyer of the pivots was IJS. But Wegener and Pribil argue that *they*—guarantors—were deceived by Lindsay. For reasons set forth above, we have determined that § 87-303.07 offers no protection to guarantors who claim to have been deceived. And since Wegener and Pribil make no argument to us that the buyer was deceived, it is not necessary for us to review whether § 87-303.07 is a personal defense that can be raised only by the principal debtor.

Wegener and Pribil contend that they should have been permitted to proceed under § 87-303.07 notwithstanding the limited language of the statute because a guarantor has a defense if fraudulently induced to enter into a guaranty. The only case they cite in support of this argument, however, is a case in which the guarantor asserted a general fraud in the inducement defense. See *West v. Wegner*, 172 Neb. 692, 111 N.W.2d 449 (1961). Here, Wegener and Pribil's allegations that they were induced into signing the guaranties by misrepresentations of Lindsay were submitted to the jury for consideration and rejected. In any event, the case Wegener and Pribil cite does not support the notion that they were also entitled to present an affirmative defense under § 87-303.07. We conclude that the district court did not err in determining that a defense pursuant to § 87-303.07 did not apply and in granting Lindsay's motion for directed verdict on that defense.

Because the evidence did not support the application of § 87-303.07, we also find that the district court did not err in rejecting the jury instructions tendered by Wegener and Pribil concerning the UDTPA. To establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show, among other things, that the tendered instruction was warranted by the evidence. See *Rodriguez v. Surgical Assocs.*, 298 Neb. 573, 905 N.W.2d 247 (2018).

*Admission of Financial Statements.*

Over Wegener and Pribil's objections based on relevance, the district court received financial statements showing their net worth. Wegener and Pribil claim that the district court committed reversible error by admitting this evidence, because it was not relevant to proving liability and was offered to prejudice the jury against them and produce a higher award.

In their brief, Wegener and Pribil argue that evidence of a defendant's financial condition is not relevant. They also argue that admission of such evidence is prejudicial. At trial, however, Wegener and Pribil objected to the admission of their financial statements only on relevance grounds. Since a party may not assert a different ground for an objection to the admission of evidence than was offered to the trial court, see *Werner v. County of Platte*, 284 Neb. 899, 824 N.W.2d 38 (2012), our review is limited to determining whether the financial statements were relevant.

[11-13] Evidence that is irrelevant is inadmissible. Neb. Evid. R. 402, Neb. Rev. Stat. § 27-402 (Reissue 2016); *Richardson v. Children's Hosp.*, 280 Neb. 396, 787 N.W.2d 235 (2010). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 2016). The bar for establishing evidentiary relevance is not a high one. Relevancy requires only that the probative value be "something more than nothing." *State v. Lavalleur*, 289 Neb. 102, 115, 853 N.W.2d 203, 214 (2014).

Wegener and Pribil argue that it has long been the law in Nebraska that evidence of financial standing of the parties is inadmissible. However, our jurisprudence does not completely bar evidence of financial standing. Rather, the relevance of such evidence is generally assessed on a case-by-case basis. See, e.g., *Vacek v. Ames*, 221 Neb. 333, 377 N.W.2d 86 (1985).

As Lindsay points out, the fact that Lindsay received financial statements of Wegener and Pribil and relied upon them in deciding to extend credit to IJS would be helpful to educate the jury on the background of the transaction. But Wegener and Pribil's real objection to the financial statements is not that the jury learned that they existed and that Lindsay received them; it is that the financial statements show their net worth.

Lindsay has relatively little to say about how Wegener's and Pribil's net worth was relevant to the issues in the case. That said, Wegener and Pribil did not ask that evidence of their net worth be redacted from the financial statements, and, furthermore, we can identify at least one way in which their net worth clears the relatively low relevance threshold. One of the issues the jury considered was whether Lindsay induced Wegener and Pribil to enter into the guaranties through misrepresentations. An element of this defense is that the representations of Lindsay's agents substantially contributed to the decision to guarantee IJS. Evidence of Wegener's and Pribil's relatively significant net worth might tend to rebut any notion that they were unsophisticated individuals who were susceptible to being swayed by the representations of Lindsay's agents.

Evidence of the guarantors' net worth may not have been highly probative on this issue, and Wegener and Pribil may have had a colorable argument that the potential for prejudice exceeded the probative value. Even so, we cannot say that the evidence lacked any probative value. Consequently, we cannot find that the district court abused its discretion in admitting the financial statements.

*Motion for New Trial.*

Finally, Wegener and Pribil argue that the trial court erred in failing to grant their motion for new trial based on the directed verdict and the admission of financial statements. An appellate court reviews a denial of a motion for new trial for

an abuse of discretion. *Facilities Cost Mgmt. Group v. Otoe Cty. Sch. Dist.*, 298 Neb. 777, 906 N.W.2d 1 (2018). Having concluded that the district court did not err in directing a verdict as to Wegener and Pribil's affirmative defenses and in admitting evidence of their finances, we find no abuse of discretion in its denial of their motion for new trial.

## CONCLUSION

For the foregoing reasons, we find no basis to reverse the district court's decision and therefore affirm.

AFFIRMED.

MILLER-LERMAN, J., not participating.